[No. H004983. Sixth Dist. Jan. 8, 1990.]

PHILLIP E. KERR, Plaintiff and Appellant, v.
KENNETH L. ROSE et al., Defendants and Respondents.

1554

**COUNSEL**

Timothy J. Donovan and John K. Haggerty for Plaintiff and Appellant.

Robert S. Venning, Cynthia L. Jackson, D. Christopher Kerby and Heller, Ehrman, White & McAuliffe for Defendants and Respondents.

**OPINION**

**COTTLE, J.**—In this wrongful termination action, plaintiff Phillip E. Kerr sued his former employer, the former employer's parent company, and various individuals for failing to recall him to work, as required by company policy, following his layoff from employment. The trial court dismissed the case after granting three separate motions for summary judgment. Kerr appeals from the judgment and from an order denying his motion for disclosure of his former employer's financial condition. We affirm the summary judgment in favor of the parent company, the summary judgment in favor of the individual defendants, and the order denying Kerr's motion for disclosure. We reverse, however, the summary judgment in favor of Kerr's former employer.

FACTS

Kerr began working for defendant Ford Aerospace and Communications Corporation (FACC) in April 1956 as a junior engineer. During his 26 years of continuous employment with FACC, Kerr received excellent evaluations, salary increases, promotions and numerous bonuses. In 1971, he was promoted to the executive category of private salary payroll (PSR).

In the company's best interests, Kerr, in October 1981, recommended a manufacturing realignment of his division at FACC which included the elimination of his own position. At the time he submitted his corporate reorganization plan, Kerr advised his supervisors that he would be seeking another PSR position within the organization. The manager of the industrial relations department, Lloyd Sunblad, however, advised Kerr that there were no other positions available to him at the PSR level. Kerr was given the option of working at a lower salary grade with the risk of being laid off subject to greatly reduced benefits or of accepting layoff at the PSR level with greater layoff benefits and subject to the company's written two-year recall policy. Kerr chose the latter option. He advised Sunblad in December 1981 that he was willing to relocate to any other FACC facility where there was a PSR position available.

Kerr began his layoff on January 31, 1982. When he had not yet been recalled to work by December 1983, Kerr telephoned to Michigan to talk to the president and chief executive officer of FACC, defendant Henry Hockeimer.[1] According to Kerr, Hockeimer told him that he could return to work at a non-PSR level; however, no specific job was discussed. Kerr states that in January 1984, Hockeimer guaranteed him that he would be recalled to a PSR position. In October 1984, however, Hockeimer advised that there were no PSR positions available.

Individual defendants in this lawsuit, in addition to Sunblad and Hockeimer, include FACC vice-president Kenneth L. Rose, FACC's director of industrial relations, Robert Macin, Kerr's supervisor, Raymond A. Ezekiel, and FACC general manager, John L. Ruby. According to Kerr, Macin said in 1984 that he would see if any PSR position was available; Rose said in 1985 that he would "keep an eye open" for openings; Ezekiel promoted one person to a PSR level position without considering Kerr; and Ruby released a written directive in 1985 stating that in filling vacancies, "primary consideration" would be given to FACC employees "before recruiting external candidates."

---

[1] Hockeimer was dismissed from this action with prejudice following his motion to quash service of summons due to lack of personal jurisdiction. Kerr has not appealed from that order.

FACC is a wholly owned subsidiary of defendant Ford Motor Company. Hockeimer is an officer of both corporations, serving as president and chief executive officer of FACC and as a vice-president of Ford Motor Company.

Other facts will be discussed where relevant.

### PROCEDURAL BACKGROUND

Kerr filed this action on January 30, 1984, the day the two-year recall period expired without Kerr's having been recalled to work. He did not, however, serve the summons or pursue the lawsuit until informal discussions with the individual defendants failed to result in a rehiring.

After one demurrer had been sustained with leave to amend, the parties stipulated to dismiss with prejudice five of Kerr's twelve causes of action. The remaining causes of action alleged fraud and bad faith which induced Kerr to accept layoff, fraud and bad faith regarding entitlement to recall and rehire, and conspiracy and interference with prospective economic advantage.

Defendant Hockeimer appeared specially to object to personal jurisdiction in California. His motion to quash service of summons was granted and on May 19, 1987, Kerr's motion for reconsideration was denied.

On September 25, 1987, defendant Ford Motor Company moved for summary judgment on each of Kerr's three causes of action against it, i.e., conspiracy, interference with prospective economic advantage, and fraud. The motion was granted and Kerr's motion for reconsideration was denied.

In January 1988 the remaining individual defendants moved for summary judgment on the two causes of action against them, i.e., conspiracy and fraud. Again, the motion was granted and Kerr's motion for reconsideration was denied.

On June 3, 1988, Kerr filed a motion to ascertain the financial condition of FACC, the only defendant remaining in the lawsuit. The court denied the motion on the ground that it was premature until the jury decided the issue of fraud.

On June 28, 1988, a hearing was held on FACC's motion for summary judgment on each of Kerr's causes of action against it: fraud and bad faith regarding Kerr's layoff, fraud and bad faith regarding entitlement to recall, and conspiracy. After concluding that Kerr was not discharged and that FACC had no duty to consider Kerr for recall during the period of his

layoff, the court granted FACC's motion. Notice of entry of the three aforementioned summary judgments was filed on August 3, 1988. Kerr appeals from the judgment and from the order denying his motion for disclosure of FACC's financial condition.

ANALYSIS

A. *The Recall Policy*

FACC asserts that Kerr was eligible for recall, as opposed to entitled to recall, only within the Western Development Laboratories (WDL) Division of FACC, only for a two-year period following his layoff, and only for positions for which he was qualified. Kerr, on the other hand, contends that the company's recall policy was of unlimited duration for any position for which he was qualified, and was not limited to the WDL component of FACC.

The trial court apparently determined that FACC's recall policy, whatever it was, was discretionary. ██ Because the interpretation of a writing " 'where extrinsic evidence is completely lacking or the quantum and quality thereof does not in reason place the trial judge in a better position to form an accurate interpretation of writings' " (*Estate of Shannon* (1965) 231 Cal.App.2d 886, 891 [42 Cal.Rptr. 278]) is a question of law, we shall independently determine the meaning of FACC's written recall policy. (*Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23 [113 Cal.Rptr. 784]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

In a 13-page policy statement covering "Termination—Non-Represented Salaried Employees," FACC explains that the *"types of termination are* Quit, *Layoff,* Release, Discharge, Retirement and Death. The type of termination controls, without exception the employe's [*sic*] eligibility for reemployment, reinstatement, and certain benefits, such as separation allowance and retirement payments. . . ." (Italics added.) On pages 3 through 4 of the statement, "layoff" is described. It begins, "A laid off salaried employe will be Reinstated if reemployed *within two years after termination* or within a period equal to the employe's length of continuous Corporate service, whichever is shorter." (Italics added.)

The report then goes on to describe four different types of "layoff." The first, and the pertinent one here, is "Reduction in Force" which is described as follows: "Employes will be laid off if they are terminated by the Corporation because of a reduction in force caused by such conditions as a declining volume of business, *discontinuation or consolidation of operations, reorgani-*

*zation,* increased efficiency of operations, loss or cancellation of a contract [etc.]" (Italics added.)

On November 1, 1978, the same day the general policy statement covering termination was issued, a second eight-page statement dealing exclusively with the topic "Reduction in Force and Recall of Non-Represented Salaried Employes" was also issued. The report states that "Each component [in this case, WDL] must develop local Reduction in Force and Recall Operating Policies consistent with these guidelines. . . . These Operating Policies should: . . . [¶] F. Provide for a recall practice under which employes on the recall list are offered reinstatement in their former or comparable positions when they become available *in the component,* and are given active consideration for other positions for which qualified *in the local geographic area.*" (Italics added.)

In the section entitled "Recall of Laid Off Employes," the policy provides: "Every *Corporation location* is responsible for maintaining a list of employes *eligible for recall.* The list should include laid off employes who are *still* eligible for reinstatement and those transferred to hourly status in lieu of layoff. All actions concerning each employe on the recall list should be documented. Documentation should include information on each instance the employee is actively considered for an opening within the component, as well as all contacts with the employe concerning available openings." (Italics added.)

The recall policy sets forth the order in which openings are to be filled: "Each component *will recall* laid off employes to position openings for which they are qualified . . . . After having recalled all of its own qualified laid off employes, a Corporation component must draw upon qualified laid off employes from other Corporation components in the local geographic area *before employing* agency personnel, temporary employes or applicants." (Italics added.)

Finally, the policy provides, in the single sentence quoted by Kerr for the proposition that the recall period is indefinite, that "Management Personnel Roll and above employes who have been laid off or reduced from former MPR and above positions and were rated 'Satisfactory' or better at the time of layoff or reduction in grade will be recalled to positions for which they are qualified when those positions become available."

When one examines the policy as a whole, it becomes clear that both FACC and Kerr have taken excerpts out of context, totally distorting the true recall policy. For example, at the summary judgment motion hearings and again on appeal, FACC argues that the whole of wrongful "termina-

tion" law is irrelevant here because Kerr essentially quit by choosing layoff over demotion. This argument, which apparently was considered by the trial court, flies in the face of FACC's own policy which defines termination inter alia as layoff. Likewise, Kerr takes one sentence from the policy to claim that he is entitled to recall without any time or geographic limitations.

■ We construe the recall policy as requiring the WDL component of FACC to hire Kerr to any PSR-level position which opened up for which he was qualified during the period January 31, 1982, through January 31, 1984. The policy specifically required the component to reinstate all qualified laid off employees *before* it could consider filling the position with *better qualified* non-WDL component laid off employees, current employees, or outside applicants. Moreover, the policy required other components of FACC within the "local geographic area" to consider Kerr for positions which became available before those positions could be filled by promotion or transfer within FACC or by outside applicants. The only candidates with priority over Kerr would be laid off employees from the other FACC component.

Before summary judgment could properly have been granted, FACC would have had to present undisputed evidence that there were no PSR-level positions opened up at the WDL component or at other FACC components within the local geographic area during the two-year period following Kerr's layoff, or that Kerr was indisputably unqualified for the openings that did occur. With respect to the first question, undisputed evidence was presented that there were PSR-level openings both at the WDL component and at other FACC locations.

With respect to the latter question, it is significant to note that FACC did not even address the question of Kerr's qualifications in its separate statement of undisputed facts in support of its motion for summary judgment. In its brief on appeal, FACC states that "plaintiff nowhere offers a single *fact* demonstrating that he had the technical skills, background, or security clearances necessary to undertake even one of the positions subsequently available at FACC. Plaintiff's mere recitation of his length of service at FACC or of his favorable performance evaluations as a manufacturing manager [citation] is entirely insufficient to make out any showing that there were positions available for which he was qualified."

FACC misconstrues the burden of proof on a motion for summary judgment. ■ It is the party seeking summary judgment, here FACC, who has the burden initially to establish evidentiary facts of every element necessary to entitle it to judgment. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95

Cal.Rptr. 623, 486 P.2d 151], disapproved on other grounds in *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724 [209 Cal.Rptr. 347, 691 P.2d 1013].) That burden is not affected by the opponent's failure to controvert. (*Ibid.*) ■ FACC's burden was to disprove the complaint (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630 [177 Cal.Rptr. 445]), not simply to show that Kerr lacked evidence to back up his claims. (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 126 [81 Cal.Rptr. 444].)

FACC submitted no evidence in its moving papers on the issue of Kerr's qualifications for the 10 openings at the WDL component of FACC or for other openings at FACC components within the "local geographic area." In its reply papers, FACC submitted defendant Robert Macin's declaration in which he opined that Kerr lacked the technical skills, background and security clearances necessary for the WDL positions. The declaration, however, emphasized that the persons hired were more qualified and better educated than Kerr, not that Kerr was totally unqualified. As noted above, the recall policy guaranteed laid off employees priority to openings for which they were qualified over other, even better qualified, candidates for the position. Significantly, Macin's declaration does not discuss openings at other FACC components within the "local geographic area." Whether Kerr was qualified for any of the openings within the recall period was a triable issue of fact which precluded the grant of summary judgment. (Code Civ. Proc. § 437c, subd. (c).)

■ In an attempt to avoid this issue, FACC argues that it was under no duty to follow its own recall/rehire policies and that hiring decisions at top management levels are properly left to management's discretion. FACC also contends that there is no cause of action for breach of a good faith duty to rehire. Both contentions are without merit.

In *Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 716 [150 Cal.Rptr. 408], plaintiff Hepp was "laid off suitable for rehire." He presented evidence that Lockheed had a well-established, but unwritten, policy that when a job opening occurred, it must be offered to those persons who within two years had been laid off suitable for rehire and who were qualified for the position before it could be filled by promotion or transfer within the company or by a new employee. Hepp also presented evidence that within the two-year period, there were six openings for his former position. Lockheed conceded that it " 'did violate its own policies and/or rules' " but argued that the rules were discretionary and were merely " 'directives to assist supervision.' " (*Id.* at p. 717.) The *Hepp* court held that the inference could be drawn that "the rehiring policy was not merely a guideline for the benefit of management but a positive inducement for employees to take and

continue employment with defendant" (*id.* at p. 719) and that therefore there was a triable issue of fact as to the intent of the regulations.

In the instant case, Kerr's position is stronger than Hepp's, buttressed as it is by FACC's written recall policy and by Sunblad's explanation of that policy to Kerr as an inducement to Kerr to accept layoff status.

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], the California Supreme Court observed that "an allegation of breach of written 'Termination Guidelines' implying self-imposed limitations on the employer's power to discharge at will may be sufficient to state a cause of action for breach of an employment contract. *Pugh* [citation] is not alone in holding that the trier of fact can infer an agreement to limit the grounds for termination based on the employee's reasonable reliance on the company's personnel manual or policies. (See, e.g., [three citations omitted]; *Toussaint* v. *Blue Cross & Blue Shield of Mich.* [1980] 292 N.W.2d at p. 892 [personnel manual provisions can give rise to contractual rights without showing of express mutual agreement]; *Morris* v. *Lutheran Medical Center* (1983) 215 Neb. 677 [parallel citation] [employer bound by published 'Policy and Procedures']; cf. *Hepp* v. *Lockheed-California Co.* [, *supra*,] 86 Cal.App.3d 714, 719 [parallel citation] [unwritten but 'well established' policy regulating rehiring of employees laid off for lack of work is enforceable].)" (*Id.* at pp. 681-682.)

Here Kerr has pleaded facts which, if proved, may be sufficient for a jury to find that FACC breached its personnel policies dealing with termination and recall of laid off employees. If he prevails, Kerr will be entitled to contract damages for his employer's breach of the implied covenant of good faith and fair dealing. (*Foley, supra*, 47 Cal.3d at p. 700; *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 976 [258 Cal.Rptr. 592, 772 P.2d 1059].)

### B. *Claims Against Ford Motor Company*

Kerr alleges three causes of action against the parent company of FACC: (1) conspiracy to defraud; (2) fraud; and (3) interference with prospective economic advantage. ■ Based on undisputed evidence of Ford Motor Company's lack of involvement in Kerr's termination from FACC or in FACC's subsequent alleged failure to consider Kerr for recall, we hold that summary judgment was properly granted.

Hockeimer declared that his communications with Kerr were solely in his capacity as an officer and director of FACC, and the other defendants

were not employees of Ford Motor Company. Kerr did not dispute these facts in his deposition:

"Q: Do you have any reason to believe that anyone at Ford Motor Company conspired in any way against you?

"A: No. . . .

"Q: Did Mr. Hockeimer at any time in any of his discussions tell you that he was talking to you in any other capacity than as President of Ford Aerospace and Communications Corporation?

"A: No.

"Q: Did you believe that he was talking to you with regard to Ford Motor Company, as opposed to Ford Aerospace and Communications Corporation?

"A: . . . No."

In opposing Ford Motor Company's summary judgment motion, Kerr submitted a declaration in which he stated: "Since my depositions . . . [,] I have concluded that HENRY HOCKEIMER was clearly serving in a dual capacity as officer and employee of both [FACC] and FORD MOTOR COMPANY . . . . [¶] I now strongly believe, after reviewing documents and depositions, that FORD MOTOR COMPANY and [FACC] developed a strategy to terminate executive employees before they reached age 53." He goes on to declare that in a staff meeting, his supervisor Ezekiel told him that " 'FORD had done an analysis comparing FORD and General Motors, and found that FORD had nearly twice the PSR to non-PSR ratio that General Motors had. This was considered a problem, and FORD was putting pressure on Ford Aerospace to correct the problem . . . .' "

This evidence is insufficient to raise a triable issue of fact as to Ford Motor Company's involvement in Kerr's termination and his failure to be recalled during the two-year period following Kerr's layoff. ■ First, the normal policy of "liberal construction" given to declarations opposing summary judgment does not apply where the declaration contradicts the declarant's earlier admissions in a deposition. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10], disapproved on other grounds in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 944 [154 Cal.Rptr. 503, 593 P.2d 200]; *Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130 [213 Cal.Rptr. 750].) ■ Secondly, it is well estab-

lished that a plaintiff's "suspicions of improper motives . . . primarily based on conjecture and speculation" are not sufficient to raise a triable issue of fact to withstand summary judgment. (*Crosier* v. *United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132, 1139 [198 Cal.Rptr. 361].) ▪ Finally, the hearsay statement of Ezekiel does not constitute competent evidence within the meaning of Code of Civil Procedure section 437c.

▪ With respect to Kerr's claim that Ford Motor Company conspired to defraud him, it is well settled that "there is *no separate tort* of civil conspiracy, and there is *no civil action* for conspiracy to commit a recognized tort unless the *wrongful act* itself is committed and damage results therefrom." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107, and cases cited therein [italics in original]; *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 44-45 [260 Cal. Rptr 183, 775 P.2d 508].) Since Kerr has failed to present competent evidence demonstrating fraud on the part of Ford Motor Company, the cause of action for conspiracy likewise fails.

## C. *Claims Against Individual Defendants*

The two causes of action alleged against the individual defendants were conspiracy to defraud and fraud. ▪ With respect to the conspiracy cause of action, " '[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. . . .' " (*Shasta Douglas Oil Co.* v. *Work* (1963) 212 Cal.App.2d 618, 624 [28 Cal.Rptr. 190]; *Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 12-13 [101 Cal.Rptr. 499, 51 A.L.R.3d 991]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72-73 [35 Cal.Rptr. 652].) All of the individual defendants were employees of and, according to the complaint, agents of defendant FACC. Because a corporation cannot conspire with its agents, the conspiracy charge was properly dismissed.

▪ With respect to the fraud claim, there was only one representation made prior to Kerr's layoff. Sunblad advised Kerr (1) that there were no PSR positions available from October 12, 1981, when Kerr proposed the reorganization, until his layoff on January 31, 1982, and (2) that plaintiff was eligible for full reinstatement or recall for a two-year period. Both of these statements were true. ▪ It is fundamental that in order to state a cause of action for fraud, there must be (1) a *false* representation of a material fact, (2) made recklessly or without reasonable ground for believing its truth, (3) with intent to induce reliance thereon, (4) on which the

plaintiff justifiably relies, (5) to his detriment. (*Chavez* v. *Citizens for a Fair Farm Labor Law* (1978) 84 Cal.App.3d 77, 80, fn. 4 [148 Cal.Rptr. 278], italics in original.)

 There was at most one representation made to Kerr during the two-year recall period. That representation was made by Hockeimer who is no longer an individual defendant in this suit.[2]

All the remaining representations occurred after the expiration of the two-year recall period. By January 31, 1984, Kerr's cause of action against his employer for failure to recall him pursuant to its written recall policy had fully matured. After the two-year period, the company no longer had an obligation to reinstate him, and the various representations were gratuitous promises not supported by consideration. Additionally, Kerr suffered no damages as a result of these various representations. He may have delayed prosecuting his lawsuit, but he did not delay in filing it. Thus, no statutes of limitation were missed, and Kerr has failed to establish any other prejudice.

The trial court properly granted summary judgment in favor of individual defendants Sunblad, Rose, Macin, Ezekiel and Ruby.

## D. *Motion for Discovery of FACC's Financial Condition*

Finally, Kerr contends that the trial court erred when it, construing revised Civil Code section 3295, denied discovery of FACC's financial condition as premature. Subdivision (c) of section 3295 provides, in pertinent part: "Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, . . . the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a *substantial probability* that the plaintiff will prevail on the claim pursuant to Section 3294." (Italics added.) Civil Code section 3294 authorizes an award of punitive damages only where it is shown by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice.

 In this case, the only potentially viable fraud claim is that based upon the conversation Kerr allegedly had with Hockeimer in December 1983. Kerr has not in any way "established that there is a substantial probability" that he will prevail on this fraud claim. For this reason, the

---

[2] Hockeimer's representations, however, if proven, may be imputed to his employer, FACC.

court's decision denying discovery of FACC's financial condition was correct even if the ground upon which the court based its decision (i.e., that the motion was premature) was incorrect. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.)

## DISPOSITION

The judgment is reversed with respect to defendant FACC. In all other respects, the judgment is affirmed. Each side to bear its own costs.

Capaccioli, Acting P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied January 30, 1990.