990 F.2d 1256
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CALIFORNIA POLLUTION CONTROL FINANCING AUTHORITY and Joseph
Karol as trustee for Solid Waste Transporters,
Inc., Plaintiffs-Appellees,
v.
Cary AGAJANIAN, Defendant-Appellant.
 No. 91-55561.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 5, 1993.
Decided April 16, 1993.
As Amended on Denial of Rehearing
June 25, 1993.
 
 Before CANBY, NORRIS and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Cary Agajanian, a founding director of Solid Waste Transporters, Inc. ("SWT"), challenges a $3 million jury verdict against him in a case brought by the company's trustee in bankruptcy and the civil authority whose bonds financed its major project, a transfer station for handling trash.[1] We reverse the verdicts for breach of contract, breach of the implied covenant of good faith and fair dealing, and conspiracy, but affirm the verdict for breach of fiduciary duty.
 
 
 3
 * Appellant challenges the sufficiency of the evidence of breach of contract. The cause of action went to the jury on two alternative theories: that a bilateral contract between Agajanian and each of his co-directors at SWT obligated him to support the station with trash or funds, or that the same obligation arose from a unilateral contract, formed when Agajanian subsequently promised to support the station, and the co-directors or the company reasonably relied on that promise. We must decide whether either theory is supported by such relevant evidence as reasonable minds might accept as adequate. Sanders v. Parker Drilling Co., 911 F.2d 191, 193-94 (9th Cir.), cert. denied, 111 S.Ct. 2014 (1991).
 
 
 4
 We find insufficient evidence of a bilateral contract. Although the jury heard testimony that Agajanian's co-directors at SWT thought they were all equal partners in the venture and that by mid-1982 Agajanian considered himself obligated to support the station's revenues, there were no objective manifestations of a bilateral contract. If, as appellees contend, a bilateral contract had been formed at the inception of the organization as part of the inducement for the California Pollution Control Authority ("CPCFA") to guarantee SWT's bonds, surely a signed copy of that contract would have been included in the bond documentation. Yet the parties agree Agajanian did not sign a contract at that time. Nor was there substantial objective evidence that Agajanian orally agreed to be bound by a supply contract.
 
 
 5
 The unilateral contract theory is likewise not supported by substantial evidence. Appellees acknowledge that consideration for Agajanian's guarantee of the station's revenues is lacking if his contract was not formed at the time of the original bond transaction in 1980. Instead, they argue that the co-directors or SWT detrimentally relied on Agajanian's promise, so that Agajanian was estopped from subsequently withdrawing his offer. See Aronowicz v. Nalley's, Inc., 30 Cal.App.3d 27, 43-44 (1973); 1 B. Witkin, Summary of California Law, Contracts § 184 at 196-97 (9th ed. 1992). Appellees cite considerable evidence that Agajanian's co-directors relied on his promise, in the sense that they treated Agajanian as a co-obligor and assessed him or his family's trash hauling business for delivery shortfalls and for other financial obligations of the station. But none of this evidence demonstrates detrimental reliance, a prejudicial change in another party's position because of Agajanian's promise. The other parties merely received a windfall in the form of Agajanian's financial assistance, to which they were not entitled unless Agajanian had undertaken his obligations at the same time his co-directors did. In sum, there is insufficient evidence of a unilateral contract formed by SWT's detrimental reliance on an offer Agajanian extended some time after the 1980 bond transaction.
 
 II
 
 6
 Because the evidence is insufficient to establish breach of contract, it is necessarily insufficient to prove breach of the covenant of good faith and fair dealing. Because the covenant is implied in the contract, there is no covenant when there is no contract. See Smith v. City and County of San Francisco, 225 Cal.App.3d 38, 49 (1990). Moreover, California courts have rarely recognized a tortious breach of the implied covenant except in the context of insurance adhesion contracts. Wallis v. Superior Court, 160 Cal.App.3d 1109, 1118 (1984), limits the cause of action to contracts that meet five criteria, including that they are entered into out of "a nonprofit motivation [such as] to secure peace of mind, security, [or] future protection." The contract alleged here, in contrast, was a commercial contract obligating entrepreneurs to guarantee the revenues of their own company. The facts do not support a verdict for breach of the covenant of good faith and fair dealing.
 
 III
 
 7
 Appellant's third challenge is to the jury's verdict that he breached his fiduciary duty as a director of SWT. As a director, Agajanian's fiduciary duty ran to the corporation and, after insolvency, its creditors. See Pepper v. Litton, 308 U.S. 295, 307 (1939). That duty required him to exercise "such care, including reasonable inquiry, as an ordinarily prudent person would use under similar circumstances." Cal.Corp.Code § 309. He could not fulfill his responsibilities by relying on others if he had knowledge of facts making this reliance unwarranted. Id.
 
 
 8
 The evidence showed that Agajanian had reason to believe that several of his co-directors were unable from the start to use the station, and that most of them did not understand their obligations to use it or guarantee its revenues. Yet Agajanian never inquired into their ability to perform their obligations under the supply agreements. Instead he "relied" on the Questor report. And he relies now on an argument that a director has no fiduciary duty to explain things to his fellow directors. True enough. But a director who fails to investigate, when he has reason to believe that the contracts he is negotiating for the company are with parties who do not understand them at all and may well not be able to perform under them, fails to exercise reasonable care, or at least the jury was entitled to so decide.
 
 
 9
 Agajanian attempts to explain away some of the evidence as demonstrating only his shortcomings in the role of corporate counsel, which he argues is not relevant because no cause of action for legal malpractice is alleged. The argument is a non sequitur. Evidence of Agajanian's incompetence as corporate counsel goes to his faithfulness as a director because it demonstrates that, had he been a reasonably careful director, he would have hired more competent counsel to represent the corporation.
 
 
 10
 Agajanian also challenges three evidentiary rulings, which we must consider in order to determine whether they hampered his ability to defend against the breach of fiduciary duty claim. The first of these was the trial court's ill-advised decision to admit into evidence a letter on Los Angeles Superior Court letterhead from retired Judge Harry Shafer. The letter was highly prejudicial on the question whether Agajanian was bound by a supply agreement, but probably had no effect on the jury's consideration of the breach of fiduciary duty claim. Thus any error was, with regard to this cause of action, harmless.
 
 
 11
 Second, Agajanian challenges the district court's refusal to allow testimony that he relied on various professionals in performing his fiduciary duties. The district court acted within its discretion in making that decision, however. Some of the proffered testimony was to have shown that Agajanian relied on other parties in concluding that his co-directors could perform on their supply agreements. Yet Agajanian had information to the contrary and was thus not entitled to rely on outside experts. Cal.Corp.Code § 309. Opinions by Mr. Gies or by O'Melveny & Myers that the deal was financially sound, as structured on paper, were not relevant because the opinions were based upon assumptions that the directors could and would perform their contractual obligations. Agajanian was chargeable with knowledge that the directors would likely be unable to perform. Finally, when the court rejected Agajanian's proffer with "I can't imagine why that's relevant to anything, who cares?" it was acting within its discretion in excluding the evidence that Gies referred Agajanian to Questor as a source for the feasibility analysis.
 
 
 12
 Appellant's third challenge is to the district court's decision to admit testimony from Mr. Seegmiller, a CPCFA official, that Agajanian made numerous false statements in the documents associated with the bond transaction. The testimony is relevant because evidence of misstatements and mistakes on documents central to SWT's financing is probative of Agajanian's competence to serve as corporate counsel, and thus of his breach of fiduciary duty in hiring himself. Moreover, to the extent Seegmiller may have testified as an expert rather than a percipient witness, any objection Agajanian may have had to Seegmiller's qualifications as an expert was not made at trial, and therefore has not been preserved for appeal.
 
 
 13
 Finally, appellant challenges the amount of the damages awarded by the jury on the breach of fiduciary duty claim. Once again, however, Agajanian failed to preserve this issue for appeal by raising it at trial. Note however that only the trustee in bankruptcy may collect these damages. CPCFA was not a proper plaintiff on this claim, and indeed included no cause of action for breach of fiduciary duty in its complaint. On remand, the judgment should be amended to delete the agency as an interested party.
 
 IV
 
 14
 Agajanian contends the jury instruction on conspiracy was flawed in that it failed to specify the object of the conspiracy, and that insufficient evidence supported the verdict for this cause of action. We agree that the evidence is insufficient to establish a civil conspiracy.
 
 
 15
 Civil conspiracy is not a separate tort, but a theory of joint liability. "[T]here is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results therefrom." Kerr v. Rose, 216 Cal.App.3d 1551, 1564 (1990) (quoting 5 B. Witkin, Summary of California Law, Torts § 44 at 107 (9th ed. 1988)). The jury instructions in this case fail to specify the "recognized tort," but if we attempt to glean the potential object of the conspiracy from the other instructions, three theories suggest themselves. Each, however, is fatally flawed. First, the jury may have believed Agajanian conspired to breach the covenant of good faith and fair dealing implied in the supply agreement, but as we explained in Part II, recovery on this theory is not available in strictly commercial contracts. Second, the jury may have believed Agajanian conspired to breach his fiduciary duty, but appellees point us toward no evidence that Agajanian acted in concert with anyone else with regard to this cause of action. Finally, the jury might have been tempted to find a conspiracy to breach the supply agreement. The difficulty with this theory is that the alleged wrong is not a tort, and thus not an appropriate object for a civil conspiracy.
 
 
 16
 AFFIRMED in part; REVERSED in part; and REMANDED.
 
 
 17
 California Pollution Control v. Agajanian, 91-55561
 
 
 18
 BOOCHEVER, Circuit Judge, concurring in part and dissenting in part:
 
 
 19
 I agree with the majority decision except for its conclusion that the entire judgment against Agajanian for breach of fiduciary duty should be upheld. I believe that the introduction of Judge Shafer's letter together with the trial judge's comments that Shafer's opinion was true, although he also stated that it could not be taken as true, and that it could be used "for any other purpose," tainted the trial to the extent that a partial retrial is required.
 
 
 20
 I do believe, however, that the introduction of the Shafer letter was harmless as to the admitted decision to distribute funds to the shareholders including the sum of $90,000 to Agajanian at a time when the corporation was insolvent. That constituted such a clear breach of fiduciary duty as not to be affected by the letter. I would therefore affirm the judgment for the damages attributable to that distribution and would remand for a new trial limited to the issue of damages for other alleged breaches of fiduciary duty by Agajanian.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The jury awarded $1,100,000 in damages for breach of contract, $1,122,000 for breach of fiduciary duty, $374,000 for breach of implied covenant of good faith and fair dealing, and $374,000 for conspiracy