Filed 12/14/23  Shin v. State Farm General Ins. Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHIN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY et al.,<br><br>    Defendants and Respondents. | D081678<br><br><br><br>(Super. Ct. No. 37-2020-00036998-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Corbett, Steelman & Specter and Bruce R. Corbett for Plaintiffs and Appellants.

Hughes & Nunn, Randall M. Nunn, and E. Kenneth Purviance for Defendants and Respondents.

Michael Shin, Ajay Bhatt, Aloha Wound Care Group, LLC (Aloha), and Karl Stemmler (collectively, Plaintiffs) appeal from a judgment entered against them after the trial court granted a motion for summary judgment in favor of State Farm General Insurance Company (State Farm) and Greg Johnson Insurance Agency, Inc. (Johnson; collectively, Defendants).  The core

of the dispute is whether Johnson, as an insurance agent for State Farm, had a duty to provide or suggest errors and omissions coverage—a special type of liability coverage, like malpractice insurance, that protects against claims arising out of alleged errors and omissions in the performance of professional services—for Stemmler's medical billing business in response to Stemmler's general request for comprehensive business liability insurance.[1]  The trial court concluded that Defendants did not owe Plaintiffs such a duty and, thus, that Plaintiffs could not maintain their sole cause of action for negligence. On the record before us, we agree.  We therefore affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Stemmler started Physicians Professional Billing Service (PPBS), a medical billing company, in 1998.[2]  Stemmler described PPBS as a sole

---

[1]  Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group 2023) ¶ 7:2400 describes " 'Errors and omissions' Insurance" as follows:

"A special type of liability insurance is available for professionals (lawyers, accountants, medical care providers, architects, engineers, etc.):  'Errors and omissions' (E&O) insurance, including 'malpractice insurance,' protects such persons against claims arising out of alleged errors and omissions in the performance of services within the scope of their profession.  (See typical insuring clause at ¶ 7:2452.)

"E&O coverage can extend beyond professional malpractice insurance. Financial institutions and other business entities often purchase E&O insurance to protect against third party claims alleging economic losses."

[2]  Defendants submitted a letter to this court, dated March 20, 2023, attaching copies of certain exhibits lodged with the trial court in support of their motion for summary judgment.  We construe the letter as a motion to augment the record with the attached exhibits and hereby grant the request. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

2

proprietorship and stated that he and his wife, Elena Stemmler, ran it together without any formal partnership agreement.

Stemmler first obtained insurance through Johnson, as an appointed agent for State Farm, sometime around 2001. At that time, Stemmler asked Johnson to provide insurance policies for all of his needs, including his personal home and auto insurance, as well as insurance for the PPBS business. According to the operative second amended complaint (SAC) Stemmler told Johnson "that his business was providing professional medical billing services to physicians" and "that he wanted coverage for all his business liabilities." "Stemmler ha[d] no experience in insurance and relied on Johnson to provide all the necessary coverage." Stemmler did not use the words "errors and omissions," but also did not recall the exact words that he did use.

In 2005, Stemmler purchased an office condominium for PPBS. The mortgage lender for the condo had certain building insurance requirements for the loan, which they communicated directly to Johnson. Johnson provided an updated insurance policy for PPBS, satisfying the lender's stated requirements, in late 2005. "[Stemmler] understood that his insurance carried forward his prior coverage for all his business liability. Johnson never advised [Stemmler] otherwise or that he needed additional or different coverage." Stemmler looked at the policy when he first received it in the mail and "understood that he was covered for his business liability."

In October 2018, Dr. Shin, Dr. Baht, and Aloha filed a complaint against PPBS and Karl and Elena Stemmler. Dr. Shin and Dr. Baht were licensed physicians that worked for Aloha. They alleged that they had a contract with PPBS for professional billing services, which they attached as an exhibit to the complaint, and that PPBS made numerous errors, including

"failing to prepare and mail billing statements, failing to post insurance payments, failing to file insurance claims in a timely manner, failing to provide monthly report updates, and failing to follow up on past due amounts." In addition, they asserted that Elena Stemmler represented herself to them as an experienced, certified medical coder but then made false representations about their ability to obtain certain reimbursements in an effort to generate greater revenues and, later, to avoid liability. Based on those claims, they asserted causes of action for breach of contract, fraud, negligence, breach of fiduciary duty and accounting against PPBS and Karl and Elena Stemmler.

Stemmler made a demand on State Farm for defense and coverage. At the time, Stemmler had a worker's compensation policy and a business office liability policy from State Farm. The business office liability policy covered claims such as employee dishonesty, loss of income due to suspension of operations, monetary losses due to theft or destruction, and utility interruption. It also had a number of exclusions. The policy stated that State Farm would have the right and duty to defend lawsuits seeking damages for " 'bodily injury,' 'property damage' or 'personal and advertising injury' " as defined by the policy. It specifically excluded coverage for expected or intended injuries, contractual liability, and claims "arising out of the rendering or failure to render any professional service or treatment." (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:2400 [explaining that errors and omissions coverage typically protects against such claims].)

State Farm denied Stemmler's claim and request for defense based, in part, on the foregoing exclusions. Stemmler had not heard the phrase "errors and omissions" coverage before and this was the first time that he learned

4

that the policy that State Farm had provided did not cover such claims. Stemmler proceeded in the litigation without assistance from State Farm and later entered into a settlement agreement that included a partial assignment to the Plaintiffs of his claims against Defendants.

Plaintiffs then jointly filed the SAC against Defendants. In the SAC, Plaintiffs assert a single cause of action for negligence against Defendants. Plaintiffs allege that Johnson and other State Farm agents "held themselves out to Plaintiffs as specialists in the small business insurance arena and in obtaining comprehensive insurance coverage," and "thus owed duties of reasonable care, diligence and loyalty, and judgment to Plaintiffs in procuring insurance and to assure that coverage as requested and promised was in place to protect Plaintiffs and PPBS." Plaintiffs allege further that "Defendants breached that duty, by failing to obtain the appropriate coverage as requested by Plaintiffs; by failing to properly and accurately name the policy to cover the known individuals working for the business; by failing to accurately represent and report the coverage obtained; and by failing to properly warn Plaintiffs of potential coverage limitations or exclusions."

In addition, Plaintiffs allege that "Defendants knew or should have known that Plaintiffs would need coverage sufficient to indemnify against errors and omissions in performance of their business by all individuals engaged in Plaintiffs' business. Plaintiffs relied upon Defendants to obtain such coverage." As a result, Plaintiffs allege that they "sustained damages for loss of insurance benefits it would have received had Defendants procured the proper coverage as well as attorney fees and costs sustained in defending such allegations."

Johnson and State Farm each filed general denials and affirmative defenses. After some discovery, including written discovery and a deposition

of Stemmler, Defendants moved for summary judgment.  They asserted that Plaintiffs could not state a claim for negligence as a matter of law because they could not establish that Johnson or State Farm had a duty to provide or suggest errors and omissions coverage to Stemmler in the absence of a specific request for that type of coverage.  The trial court agreed, granted the motion for summary judgment, and issued judgment in favor of Defendants.

Plaintiffs filed a timely notice of appeal.

## II.    DISCUSSION

### A.    Standard of Review

A trial court shall grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).)

A defendant moving for summary judgment has the initial burden to present evidence sufficient to establish that the plaintiff either cannot prove at least one element of, or that there is a complete defense to, each cause of action as alleged in the complaint.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853 (*Aguilar*); *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 ["the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings."].)

If the defendant does so, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 850.)  A triable issue of material fact exists if the evidence would allow a reasonable trier of

fact to make a factual finding that is necessary under the pleadings in favor of the party opposing the motion. (*Aguilar, supra,* at pp. 843, 850.) The plaintiff may not rely on the allegations in the pleadings to establish the existence of a triable issue of material fact and, instead, must " 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar,* at p. 849; Code Civ. Proc., § 437c, subd. (p)(1) & (2).) The trial court may not weigh the evidence and must deny the motion if the evidence presented by the opposing party, or any inferences reasonably drawn therefrom, raises a triable issue of material fact. (*Aguilar,* at p. 856.)

On appeal from a summary judgment, we apply the same legal standard used by the trial court and independently assess the correctness of the trial court's ruling. (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231; *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 326.) "[W]e examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) However, " '[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230; see also *Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 253 (*Vulk*) ["Because the trial court's judgment is presumed to be correct, [P]laintiffs (as the appellants) have the burden of affirmatively establishing reversible error."].)

7

**B.    The Trial Court Properly Sustained Defendants' Evidentiary Objection to Stemmler's Declaration**

Before turning to the merits of the summary judgment motion itself, we consider the trial court's ruling sustaining Defendants' objection to certain statements in a declaration that Stemmler submitted in opposition to the motion for summary judgment.

### 1.  Additional Background

Defendants took Stemmler's deposition prior to filing their motion for summary judgment and relied on statements made during the deposition as support for their motion.  Defendants asserted in their moving papers that Stemmler said he "asked for coverage for 'anything associated with medical billing' but [that] he admit[ed] he never discussed wanting to be insured for errors in his business' medical billing service, or even saying he had concerns about such billing."  In support, they quoted the following exchanges from Stemmler's deposition:

> "Q. Okay. Did you discuss with him any concerns about being sued by customers for errors in the medical billing services?
>
> "A. I did not.
>
> "Q. Did you discuss with him wanting to be insured for professional services of your business?
>
> "A. I don't recall whether I used those words.
>
> "Q. Okay. I'm looking to see if you said anything more specific than I want insurance for anything associated with my business.
>
> "A. I can't be more specific looking back 20-something years.
>
> "Q. Okay.
>
> "A. I do not recall."

In a declaration filed in support of Plaintiffs' opposition to the motion for summary judgment, Stemmler stated, in relevant part:  "While as I said

8

in my deposition I do not remember exactly what was said in my initial meeting with Johnson, *I remember what I was thinking and what I must have conveyed to Johnson and later his employees. I wanted liability protection for my business* [PPBS]. *I am sure I discussed with Johnson and others that PPBS was a billing service and I wanted liability protection for that service.*" (Italics added.)

Defendants objected to the italicized portion of Stemmler's statement as inadmissible speculation pursuant to Evidence Code section 702, and as improperly contradicting his own prior deposition testimony. They asserted, "Plaintiff's attempt to contradict his sworn testimony by way of a speculative and self-serving declaration is simply insufficient to raise a triable issue of fact on motion for summary judgment."

The trial court agreed and sustained the objection as to the italicized language.

**2. Analysis**

Where, as here, a trial court rules on an evidentiary objection in the context of a summary judgment proceeding, we review the ruling for an abuse of discretion. (*Doe v. SoftwareONE Inc.* (2022) 85 Cal.App.5th 98, 103–104.) We find no abuse of discretion in the trial court's ruling.

Evidence Code section 702, subdivision (a) provides that testimony from non-expert fact witnesses "concerning a particular matter is inadmissible unless he has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter." A party may rely on hearsay presented through affidavits and deposition testimony to support or oppose a motion for summary judgment, but any such affidavit or declaration "shall be made by a person on personal knowledge, shall set forth admissible evidence,

9

and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (Code Civ. Proc., § 437c, subds. (b)(1) & (2), (d).)

Plaintiffs assert that the italicized statements were admissible because they were based on Stemmler's personal knowledge of what he was thinking when he met with Johnson, and because Stemmler's state of mind was a relevant fact that he was permitted to testify about. (See, e.g., *Love v. Wolf* (1967) 249 Cal.App.2d 822, 832–833 [" 'The state of mind of a person . . . is a fact to be proved like any other fact when it is relevant to an issue in the case, and the person himself may testify directly thereto.' "].) Although we agree that evidence regarding one's state of mind is generally admissible, here, Stemmler's state of mind was not at issue or pertinent to determining whether Johnson or State Farm owed him a duty. As we will discuss in more detail, *post*, what was relevant is what Stemmler *said* to Johnson regarding the type of insurance he was seeking. And Stemmler conceded, both at the deposition and in the declaration itself, that he did not remember "exactly what was said." His contradictory assertion that he "must have conveyed" certain information while admitting that he could not remember "exactly what was said" is purely speculative and not grounded in personal knowledge or recollection.

Regardless, even if the foregoing statements were technically admissible, they were of minimal evidentiary value. As we have already explained, they are both internally inconsistent and in direct contradiction to Stemmler's prior deposition testimony. Accordingly, we agree with Defendants that the italicized statements are not sufficient to create a triable issue of material fact. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 (*D'Amico*) [concluding that admissions obtained during

discovery should be afforded greater deference than evidentiary allegations in affidavits]; *Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1563 (*Kerr*) ["the normal policy of 'liberal construction' given to declarations opposing summary judgment does not apply where the declaration contradicts the declarant's earlier admissions in a deposition."]; see also *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427 [any error in sustaining evidentiary objections was harmless where declaration did not prove the claim in any event].)

As we explain next, given the totality of the evidence submitted in support and opposition to the motion for summary judgment, we find no error in the trial court's conclusion that Plaintiffs could not establish that Defendants had a duty to provide or suggest errors and omissions coverage to Stemmler, and therefore cannot establish their sole cause of action for negligence as a matter of law.

## C. Plaintiffs Have Not Established a Duty Necessary to Support Their Cause of Action for Negligence

"To succeed in a negligence action, the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.) " '[W]hether a duty of care exists in a given circumstance, "is a question of law to be determined on a case-by-case basis." ' " (*Ibid.*; *Vulk, supra,* 69 Cal.App.5th at p. 254.) Accordingly, here, if Plaintiffs cannot establish that Defendants owed them a legal duty, they cannot prevail on their negligence cause of action as a matter of law.

" '[A]s a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage.' " (*Vulk, supra,* 69 Cal.App.5th at p. 254.) "The general

11

no-duty rule changes only when one of the following three things occurs: (1) the agent misrepresents the nature, extent or scope of the coverage being offered or provided; (2) there is a request or inquiry by the insured for a particular type or extent of coverage; or (3) the agent assumes an additional duty by either express agreement or by holding themself out as having expertise in a given field of insurance being sought by the insured." (*Id.* at pp. 254–255, italics omitted.) The trial court concluded that only the second scenario was at issue here, and Plaintiffs do not contest that finding on appeal. "To trigger a special duty of care under the second scenario, an insured's request for a particular type or extent of coverage must be sufficiently 'targeted' or 'specific' before an insurance agent will be held to have undertaken an obligation to procure the coverage." (*Id.* at p. 255.)

In *Vulk*, the plaintiff told his State Farm insurance agent "that he wanted the 'best policy' for his home," and, in response, the agent told him his policy "provided 'full coverage.' " (*Vulk, supra,* 69 Cal.App.5th at pp. 250–251.) A fire destroyed the plaintiff's home and, although he recovered a substantial sum in coverage from State Farm, he sued, claiming that State Farm "breached its duty to use reasonable care in estimating the replacement cost of his home for the purpose of setting coverage limits, thereby resulting in unreasonably low coverage limits." (*Id.* at p. 252.) The trial court granted summary judgment in favor of State Farm and the appellate court upheld the judgment. (*Ibid.*) In doing so, the *Vulk* court pointed out that the plaintiff "did not direct the trial court to any evidence showing that he specifically requested [the agent] procure full replacement cost coverage for his home," and, instead, "stated in his deposition that he never made a specific inquiry as to the type or extent of coverage provided by his homeowners policy." (*Id.* at p. 257.) The court therefore concluded, "that the evidence was insufficient

12

to establish a triable issue of fact as to whether [the agent] assumed a special duty of care to ensure [the plaintiff] had full replacement cost coverage for his home under a misrepresentation of coverage theory or a failure to procure the agreed-upon coverage theory." (*Id.* at p. 258.)

By contrast, the court in *Greenfield v. Insurance Inc.* (1971) 19 Cal.App.3d 803 found that the evidence did establish a potential duty on behalf of the insurer. Greenfield, the insured, filed a complaint alleging, among other causes, that Insurance Inc. was negligent for having failed to obtain a business interruption policy covering mechanical breakdown of a shredder that he purchased for his business. (*Id.* at pp. 807–808.) As the court explained, the evidence showed that Greenfield had "*specifically requested business interruption insurance covering a mechanical breakdown of the shredder*," and that his insurance agent confirmed that " 'everything would be covered,' except breakdown cause by flood or earthquake." (*Id.* at p. 808, italics added.) However, the policy that Greenfield received excluded losses cause by mechanical breakdown, which Greenfield only discovered when the shredder did break down. (*Id.* at p. 809.) The *Greenfield* court found that the evidence supported a finding of negligence, in part because Insurance Inc. had a duty to exercise reasonable care to provide the specific coverage that Greenfield requested. (*Id.* at p. 810.)

Likewise, in *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685 (*Westrick*), the court found that State Farm had a duty to inform the insured, Westrick, that a vehicle he purchased was not covered under a 30-day automatic coverage provision in his existing policy that he and his agent had specifically discussed. (*Id.* at p. 688–689.) Westrick spoke to his regular agent, Doug Crawford, in May about buying a truck for his business, and Doug told him that the automatic coverage clause in his policy would cover

13

the vehicle for 30 days. (*Id*. at p. 688.) Westrick did not end up buying that truck but did purchase a welding business for his son that July, which included a pickup truck and a one-and-a-half-ton welding truck. (*Ibid*.) Westrick called Doug immediately, but Doug's father, Jim, who was also a State Farm agent, answered the phone. (*Ibid*.) Westrick described the newly acquired vehicles to Jim and stated that he wanted insurance for them. (*Ibid*.) He offered more information, but the agent stated that was not necessary and that Doug would be in the next day. (*Ibid*.)

Unfortunately, before Westrick spoke with Doug, his son was involved in an accident while driving the welding truck. (*Westrick, supra,* 137 Cal.App.3d at p. 689.) Thereafter, Westrick learned that the automatic coverage clause did not apply to the welding truck because it was a commercial six-wheeled vehicle. (*Ibid*.) The court found that the agents "had superior knowledge concerning the scope of the automatic coverage clause," and there was at least a triable issue as to whether the agents had a duty to explain the limitations of the coverage, given Doug's previous conversation with Westrick concerning the provision, the content of Westrick's call with Jim the day he purchased the welding truck at issue, and the foreseeability of harm. (*Id*. at p. 692.)

Relying on this line of cases and the more recent case, *Jones v. Grewe* (1987) 189 Cal.App.3d 950 (*Jones*), Plaintiffs assert, generally, that "an insurer has a duty to exercise reasonable care in seeking coverage as requested by the insured, and violates that duty by not obtaining the coverage." (*Id*. at p. 955.) They argue that, here, as in *Westrick*, Johnson knew that Stemmler wanted coverage " 'for anything associated with medical billing and that type of business,' " and therefore had an obligation to either provide errors and omissions coverage or to inform Stemmler that it was not

14

included.  However, unlike those cases, in which the insured had asked about a very specific type of coverage, here, Stemmler concedes that he never asked specifically for errors and omissions coverage.  In fact, he states that he had not even heard of the term "errors and omissions policy."  Moreover, at his deposition, Stemmler repeatedly stated that he did not know the exact words he used, but that he did not discuss "any concerns about being sued by customers for errors in the medical billing services."

After considering both *Greenfield* and *Westrick*, the court in *Jones* clarified:  "The general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection, as appellants seek to impose here." (*Jones, supra,* 189 Cal.App.3d at p. 956.)  The court continued:  "The mere allegation in a complaint, as in this case, that an insured has purchased insurance from an insurance agent for several years and followed his advice on certain insurance matters is insufficient to imply the existence of a greater duty.  Such reliance is not at all uncommon when an insured has done business with an insurance agency over a period of time." (*Id.* at p. 956.) "Ordinarily, the person seeking liability insurance knows better than the insurance agent the extent of his personal assets, and the premium he can afford or is willing to pay." (*Ibid.*)

The trial court concluded this case was more akin to *Ahern v. Dillenback* (1991) 1 Cal.App.4th 36 (*Ahern*).  We agree.  "In September 1982, the Aherns, residents of Connecticut who were visiting Monterey, California, decided to purchase an automobile insurance policy that would provide coverage for their upcoming anticipated travels in Europe." (*Id.* at p. 40.) The Aherns contacted a local insurance agent and told him that "they wanted a foreign policy that would provide full coverage or the 'best coverage that

exists,' " and, according to Joan Ahern, the agent "advised her she would receive full insurance coverage with policy limits that would safely protect her and her husband." (*Ibid*.) "At the time, Joan Ahern was generally unaware of uninsured motorist coverage and the subject did not come up." (*Ibid*.)

While in Europe, Joan "was seriously injured in a hit-and-run automobile accident with an unidentified and uninsured motorist." (*Ahern, supra,* 1 Cal.App.4th at p. 41.) Joan filed a claim under the policy, but the claim was denied. (*Ibid*.) The Aherns filed suit against the insurance agent and the agency he worked for, claiming negligence in failing to secure a policy that covered uninsured motorists, among other claims. (*Ibid*.) The trial court granted summary judgment and the Aherns appealed. (*Ibid*.) Relying on *Jones,* the *Ahern* court concluded the defendants did not have a duty to procure a specific type of insurance that the Aherns did not request (i.e., uninsured motorist coverage), or to inform them of the availability of such coverage. (*Id*. at p. 43.) The court explained, " ' "An agent may point out to [the insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond." ' " (*Ibid*.) "Hence, as a matter of law, the defendants did not owe the requisite duty to the Aherns to sustain their cause of action for negligent procurement of insurance." (*Ibid*.)

Plaintiffs assert that, unlike the Aherns, Stemmler did request "the exact coverage that [Defendants] did not supply." But, as the trial court explained, business liability insurance and errors and omissions insurance "are two very different types of coverage." "A CGL [Commercial General Liability] policy is intended to cover general liability, not an insured's

16

professional or business skill. [Citation.] Often referred to as a business general liability policy, a CGL policy provides liability insurance for businesses." (*Energy Ins. Mutual Limited v. Ace American Ins. Co.* (2017) 14 Cal.App.5th 281, 292, italics omitted.) "In general, 'CGL policies are limited to providing coverage for accidental occurrences, and *do not provide coverage for professional negligence claims.*' " (*Ibid.,* italics added.) "As a result, 'CGL policies often contain exclusions for loss resulting from the rendering of or failure to render professional services.' " (*Ibid.*)

The evidence presented in the summary judgment proceedings conclusively establishes that Stemmler asked generally for business liability coverage, and that he did not specifically ask for errors and omissions insurance. Plaintiffs assert that Stemmler did not use the words "errors and omissions" because he did not know what errors and omissions insurance was, but they present no authority suggesting that Stemmler's own lack of knowledge about the specific type of insurance he was seeking somehow conferred a duty on Johnson or State Farm to inform him of all available types of coverage, nor do they present any evidence suggesting that either Johnson or State Farm held themselves out to be experts in the field of medical billing insurance or errors and omissions insurance. (See *Vulk, supra,* 69 Cal.App.5th at pp. 254–255.) Rather, as the trial court explained, generally " 'an insurance agent does *not* have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage.' " (*Id.* at p. 254, italics added.)

Based on the foregoing, we conclude, on our own de novo review, that Plaintiffs have not presented evidence sufficient to establish a triable issue of

17

material fact as to whether Defendants had a duty to provide errors and omissions insurance.[3]

### III.   DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.


KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.

---

[3]    Plaintiffs also assert that State Farm did not inform Stemmler of the exclusion by specifically pointing it out, but he conceded at his deposition that State Farm did send him copies of his policy, that he "probably looked at it every year," and that he reviewed at least some of the exclusions. Stemmler's assertion in his declaration that he "never read the whole policy because [he] was relying on [his] understanding that [State Farm] had in fact obtained the insurance [he] told them [he] wanted" is not sufficient to establish a triable issue of material fact.  (See, e.g., *Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578 ["an insured has a duty to read his policy"]; *D'Amico, supra,* 11 Cal.3d at p. 22; *Kerr, supra,* 216 Cal.App.3d at p. 1563.)