GENERAL ENGINEERING, INC., and Harvey Aluminum (Incorporated), Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 17427.

United States Court of Appeals Ninth Circuit.

Dec. 31, 1962.

Rehearing Denied Feb. 13, 1963.

Rhoten, Rhoten & Speerstra, Sam F. Speerstra, William B. Wyllie and Maxwell H. Elliott, Salem, Or., for petitioners.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, and Robert Sewell, Attys., N. L. R. B., Washington, D. C., for respondents.

Before ORR, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This case is before the Court on the amended petition of General Engineering, Inc., and Harvey Aluminum (Incorporated), (referred to individually as "General Engineering" and "Harvey Aluminum" and collectively as "petitioners"), to review and set aside an order of the National Labor Relations Board issued against them on May 19, 1961,

corrected on May 29, 1961, and on the cross-petition of the National Labor Relations Board (hereinafter the "Board") for enforcement of its order.

This Court has jurisdiction of the proceedings under Section 10(e) and (f) of the National Labor Relations Act, as amended (29 U.S.C. § 151 et seq.), the unfair labor practices having occurred at petitioners' plant in The Dalles, Oregon.

Petitioners jointly operate an aluminum plant which employs approximately 500 production and maintenance workers.

On April 2, 1959, the Board issued a decision and direction of election in Case No. 36-RC-1376 ordering a representation election among production and maintenance personnel in the employ of petitioners. The election was held on April 27th and 28th, 1959. The participating labor organizations listed on the ballot were United Steel Workers of America, AFL-CIO, and Aluminum Workers Council of The Dalles, Oregon. A substantial majority of the ballots were cast against representation by either labor organization.

One of the labor organizations filed objections to the result of the election and after investigation, the Regional Director of the Board, under date of June 12, 1959, recommended to the Board that the election be set aside on various grounds. On June 24, 1959, the same labor organization filed two charges with the Board, one in Case No. 36-CA-953 and the other in Case No. 36-CA-954, each imputing to the petitioners violations of the National Labor Relations Act.

Petitioners filed objections to the report of the Regional Director and requested that a hearing be held to determine issues raised by the objections, and on July 30, 1959, the Board directed that a hearing be held.

On August 12, 1959, on the basis of the charges filed and amendments thereto, the General Counsel of the Board issued a complaint alleging that the petitioners had violated Section 8(a) (3) of the Act by discharging and refusing to reinstate two employees, Cavanaugh and Fowler, because of the Union membership and activities of such employees; that petitioners discharged Foreman Woodruff because of his refusal to discharge or otherwise discriminate against various of petitioners' employees including Cavanaugh, and failure to engage in other unfair labor practices; and that by reason of the discharge of Cavanaugh, Fowler and Woodruff, and other conduct, petitioners had interfered with, restrained and coerced respondent's employees in the exercise of rights guaranteed them by Section 7 [1] of the Act, and had thereby violated Section 8(a) (1) of the Act.

The proceedings directed by the Board to resolve issues relating to the election were consolidated for hearing with the two cases in which charges were filed.

Following hearing on the consolidated cases and the intermediate report and recommended order of the Hearing Officer, the Board, on May 19, 1961, issued its decision and order which is now under review.

The order, among other matters, directed that the election held on April 27th and 28th, 1959, in Case No. 36-RC-1376 be set aside and that the case be remanded to the Regional Counsel for the purpose of conducting a new election "at such time as he deems the circumstances permit the free choice of a bargaining representative."

---

1.    RIGHTS OF EMPLOYEES

"§ 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

Pursuant to the order last mentioned, the Regional Director conducted a new representation election and, under date of September 1, 1961, the Board issued its certification of the results of that election in which it is stated that the new election was conducted; that no collective bargaining representative had been selected; that no objections were filed to the tally of ballots or to the conduct of the election and in which it was certified "that a majority of the valid ballots had not been cast for any labor organization appearing on the ballot, and that no such organization is the exclusive representative of all the employees, in the unit here involved, within the meaning of Section 9(a) of the National Labor Relations Act." No issue is raised on this review in respect to the validity of the re-run election and that proceeding is closed.

In summary, the Board found: (1) That petitioners' conduct prior to the first representation election of April 27th and 28th, 1959, interfered with the employees' free selection of bargaining representatives, in violation of Section 8(a) (1) of the Act;[2] (2) that the petitioners violated Section 8(a) (3) and (1) of the Act by discharging employees Cavanaugh and Fowler for resuming Union activities; and (3) violated Section 8(a) (1) of the Act by discharging Supervisor Woodruff for refusing to substantiate the pretextual "cause" for Cavanaugh's discharge.

■ We will first consider the problem before us relating to Case No. 36-RC-1376 wherein the Board ordered the representation election which was held on April 27th and 28th, 1959. In the decision and order under review, the Board found that prior to that election the petitioners, through circulars and speeches, promised higher wages and other economic benefits if the employees voted against Union representation in the election, and threatened reprisals if they chose to be so represented. The Board concluded that such conduct on the part of petitioners interfered with the employees' right to freely select a bargaining representative in violation of Section 8(a) (1) of the Act, and ordered that such election be set aside and that a new election be held. The petitioners do not question the propriety of such findings, conclusions and order as contained in the order under review. The new election was held subsequent to the Board's order and it is unquestioned that this election was properly held under circumstances which permitted the employees to freely choose their bargaining representative without restraint, coercion, threatened reprisals or interference by petitioners. In our view, such certificate makes moot all portions of the order under review which relate to the representation case. In National Labor Relations Board v. Jones & Laughlin Steel Corp., 331 U.S. 416, at p. 428, 67 S.Ct. 1274, at 1281, 91 L.Ed. 1575 (1947), it is stated:

"When circumstances do arise after the Board's order has been issued which may affect the propriety of enforcement of the order, the reviewing court has discretion to decide the matter itself or to remand it to the Board for further consideration. For example, where the order obviously has become moot, the court can deny enforcement without further ado; but where the matter is one involving complicated or disputed facts or questions of statutory policy, a remand to the Board is ordinarily in order."

The cease and desist order in this case is extremely broad and in some respects is based upon matters which have been mooted by the issuance of the certifica-

2. UNFAIR LABOR PRACTICES
"§ 8(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

\*      \*      \*      \*      \*

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: \* \* \*."

tion of the results of the election held subsequent to the order under review. On remand, the Board should modify the order in respect to matters mooted by the new election.

■ We now turn to the Board's order as it relates to employees Cavanaugh and Fowler. Petitioners do not contest the propriety of the Board's findings as to the unlawful discharge of these two employees. Hence, it is unnecessary to summarize the testimony upon which such findings are based.

The sole issue presented to us for review in respect to Cavanaugh and Fowler relates only to that portion of the Board's order which directs petitioners to offer Cavanaugh and Fowler "immediate and full reinstatement to their respective former, or substantially equivalent positions without prejudice to their seniority and other rights and privileges, and make each of them whole * * *."

In respect to Cavanaugh, petitioners state in their reply brief that they and the Board's representative "worked out a compromise settlement of the Cavanaugh matter and it was settled on January 23, 1962." Petitioners concede that neither the fact of compromise settlement or the terms thereof appear in the record before us.

In respect to Fowler, it appears in the record that some weeks after his unlawful discharge, he was offered reemployment by petitioners and returned to work and was working for petitioners at the time of the hearing. The Board found that he was not returned to his former position or to a substantially equivalent position. Petitioners argue that statements made by the Board's counsel during a colloquy with the Trial Examiner to the effect that Fowler had been restored to his former position constituted a binding and conclusive admission of such fact, thereby leaving the finding of the Board that Fowler had not been restored to his former position or to a substantially equivalent position without evidentiary support. We cannot give the statements such broad effect.

To us the statements are nothing more than a circumstance to be considered by the trier of fact in arriving at the ultimate finding. It is to be noted that petitioners do not contend that Fowler has been made whole for the loss, if any, of earnings during his period of unemployment following his unlawful discharge.

In our view, there is substantial evidence in the record considered as a whole to support the findings, conclusions and order in respect to Cavanaugh and Fowler. Issues as to whether the rights of Cavanaugh have been fully settled by compromise and whether Fowler has been restored to his former position may be raised by petitioners in further proceedings before the Board which the order under review necessarily contemplates.

■ We will now consider the propriety of the Board's order in respect to Supervisor Woodruff. The Board found that petitioners violated Section 8(a) (1) of the Act by discharging Supervisor Woodruff for refusing to support as true the alleged petitioners' pretext for the discharge of Cavanaugh and ordered petitioners to offer Woodruff immediate and full reinstatement to his former position or a substantially equivalent position without prejudice to his seniority rights and privileges and make him whole.

There is no dispute by the petitioners that Woodruff was a "supervisor" within the meaning of Section 2(11) of the Act (29 U.S.C. § 152(11)). Section 2(3) of the Act states:

"The term 'employee' [as used in the Act] * * * shall not include * * * any individual employed as a supervisor * * *."

Basically, petitioners contend that the Board has no jurisdiction to order a discharged "supervisor" reinstated; that a "supervisor" can be discharged with or without cause; and that the discharge of a "supervisor" cannot form the basis of an unfair labor practice. In support of their position, petitioners rely mainly

on National Labor Relations Board v. Fullerton Publishing Company, 283 F.2d 545 (9th Cir., 1960). The Board contends that while an employer may demand the complete loyalty of "supervisors" and may discharge those who participate in Union activity, the discharge of Woodruff for refusal to support the pretextual dismissal of Cavanaugh interfered with the self-organizational rights of non-supervisory employees and thereby constituted a violation of Section 8(a) (1) of the Act. The Board in support of its position relies upon National Labor Relations Board v. Talladega Cotton Factory, 213 F.2d 209, 40 A.L.R.2d 404 (5th Cir., 1954).

We find it unnecessary to resolve these conflicting contentions.

We agree with the dissenting view expressed by Board Member Rogers who dissented from the majority view that the discharge of Supervisor Woodruff constituted a violation of Section 8(a) (1). In the opinion of Board Member Rogers, the record evidence is insufficient to support a finding or sustain an inference that any employee knew or could have known of the motivation for Woodruff's discharge. We agree with Board Member Roger's view that the record evidence indicates to the contrary. Woodruff discussed with Cavanaugh the possibility that both might be discharged because of the "grain incident" but said nothing to Cavanaugh from which Cavanaugh might suppose that Cavanaugh was to be discharged for any other reason, or that Woodruff was to be discharged for refusing to help petitioners use the incident as a pretext, or that Woodruff had even been asked to help frame such a pretext.

We do not agree that when Wallis, the Security Guard, suggested a shifting of the blame to Cavanaugh for violation of the security measures, that Wallis was speaking for the petitioners. It cannot reasonably be inferred that petitioners had authorized Wallis to engage Woodruff in a conspiracy to prevent them from discovering a breach of security rules. Woodruff did not refuse to support his employer. He refused to support Wallis. In our view the actions of Wallis were purely personal and were directly opposed to the interests of petitioners. Wallis, in making the suggestion to shift the blame to Cavanaugh, was seeking to promote his own interests and preserve his employment with petitioners. See National Labor Relations Board v. Citizen-News Co., 134 F.2d 962 (9th Cir., 1943).

Substantial evidence on the record considered as a whole does not support the Board's findings as to the reasons for or the effect of Woodruff's discharge or that Wallis's conduct can be imputed to petitioners.

In view of the state of the record before us and the disposition to be made of the proceedings, we deem it unnecessary to consider petitioners' contentions that the Board erred in upholding the decision of the Trial Examiner revoking the subpoena *duces tecum* served on the Regional Director or that the Board erred in upholding the refusal of the Trial Examiner to require counsel for the Board to testify in response to a subpoena.

For the reasons expressed above, IT IS ORDERED:

(1) That the cross-petition for enforcement of the Board's order is granted in respect to Cavanaugh and Fowler and dismissed in respect to Woodruff; and

(2) That the "cease and desist" portion of the Board's order be modified in a manner consistent with the views expressed in this opinion.