[Nos. B013237, B015402. Second Dist., Div. Five. Apr. 24, 1986.]

STEPHEN L. BASSETT, Plaintiff and Appellant, v.
LARRY ATTEBERY, Defendant and Respondent.

STEPHEN L. BASSETT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
METROMEDIA, INC., Real Party in Interest.

---

**COUNSEL**

Mathews & Evans and William D. Evans for Plaintiff and Appellant and Petitioner.

Gibson, Dunn & Crutcher, Rex S. Heinke, Michelle Patterson and Wendy R. Kameda for Defendant and Respondent and Real Party in Interest.

No appearance for Respondent Court.

**OPINION**

**EAGLESON, J.**—In this case, we hold that the National Labor Relations Board (NLRB) has exclusive jurisdiction over a wrongful discharge claim filed in state court, alleging federal labor law violations.

Bassett sued Attebery and Metromedia. The trial court granted summary judgment in favor of Attebery. In the same minute order, the court granted a motion for summary adjudication of issues in favor of Metromedia. Bassett appeals from these two rulings. We affirm.[1]

---

[1]The Attebery matter (B013237) is an appeal from a dismissal entered following an order granting summary judgment. The Metromedia matter (B015402) is before us on a petition for writ of mandate. Notwithstanding these dissimilar procedural postures, the issues raised are identical. For that reason, the matters have been consolidated on appeal.

## Procedural History

Bassett is a former executive producer of television news at Channel 11 in Los Angeles (KTTV).[2] His verified first amended complaint against Metromedia, his corporate employer, and Attebery, his former supervisor, sounded in four counts: (1) breach of the terms of an oral contract of employment against both defendants; (2) intentional interference with a prospective business advantage against defendant Attebery only; (3) breach of the covenant of good faith and fair dealing as to both defendants; and (4) wrongful discharge in violation of public policy as to both defendants.

The court sustained without leave to amend Attebery's demurrer to Bassett's claims of intentional interference with prospective business advantage (count 2) and breach of the covenant of good faith and fair dealing (count 3). Also, Attebery's and Metromedia's motion to strike certain portions of the complaint was granted. Bassett has not sought review of any of these rulings.

Defendants thereafter jointly moved for summary judgment against plaintiff's remaining claims: breach of oral contract against Metromedia and Attebery (count 1); breach of the covenant of good faith and fair dealing against Metromedia alone (count 3); and wrongful discharge in violation of public policy against both Metromedia and Attebery (count 4).

The summary judgment motion was made on the following grounds: (1) Attebery could not be liable for breach of the alleged oral agreement because he was never a party to any such contract between plaintiff and Metromedia; and (2) Bassett's wrongful termination claims against Metromedia and Attebery were based upon alleged federal labor law violations and were therefore preempted by federal law entrusting the NLRB with exclusive jurisdiction of such claims.

■■■■ Bassett conceded that Attebery's motion on the contract claim was well taken. The trial court then granted the balance of the motion on the ground that the NLRB had exclusive jurisdiction of the wrongful termination claims.[3]

---

[2]In opposition to the joint motion for summary judgment, Bassett filed an uncontradicted declaration in which he said he was a supervisor. The importance of this status is discussed *infra* in Part II.

[3]The granting of the motion for summary judgment in favor of Attebery had the legal effect of dismissing him from the case. The granting of the motion for summary adjudication of issues in favor of Metromedia removed a portion of the remaining issues between it and Bassett. The only remaining claim is the one by Bassett against Metromedia for breach of an oral employment contract (count 1) and is not involved in this appeal.

## ISSUE

The main issue is whether Bassett's wrongful termination claims, which involve alleged federal labor law violations, are preempted by federal law so as to preclude the exercise of state jurisdiction over them.[4]

## DISCUSSION

### I

■ "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . . [¶] At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. . . . [¶] . . . When an activity is *arguably subject* to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244-245 [3 L.Ed.2d 775, 782-783, 79 S.Ct. 773], italics added.)

"The decision as to whether to preempt state court jurisdiction, then, 'must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies . . . .' [Citation.] And, '[t]he critical inquiry, . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.' (*Sears, Roebuck &*

---

[4]Bassett asserts there is an issue on appeal of whether Attebery may be sued individually for the tort of wrongful discharge. Neither Attebery nor Metromedia address the contention in their joint respondent's brief. Suffice it to say that we do not discuss this point because of the views we express on federal preemption.

*Co.* v. *Carpenters* [(1978)] 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226, 98 S.Ct. 1745].)" (*Henry* v. *Intercontinental Radio, Inc.* (1984) 155 Cal.App.3d 707, 713 [202 Cal.Rptr. 328].)

After the irrelevant material was stricken from the first amended complaint, Bassett's remaining charging allegations are: "Plaintiff is informed and believes and based thereon alleges that defendant Attebery believed . . . that plaintiff knew Attebery committed *serious violations of State and Federal Labor laws in connection with a recent union election;* and . . . that unless plaintiff was discredited and/or silenced *these alleged facts would become public knowledge.* [¶] . . . . [¶] On or about June 11, 1981, defendants, *acting without good cause, and in violation of fundamental principles of public policy including specifically . . . state and federal labor laws governing the conduct of union elections . . .* wrongfully, and without cause or justification, terminated plaintiff's employment." (Italics added.)

These conclusionary allegations are not factually revealing. We are not told what "serious violations of state and federal labor laws" Attebery committed in "connection with a recent union election." We can infer, however, that Bassett and perhaps other Metromedia employees were victimized by the alleged violations, since an election ordinarily involves more than one voter.

We can also infer that defendants expected Bassett to reveal Attebery's violations. This conclusion is premised upon Bassett's allegation that unless he was silenced or discredited, Attebery believed "such facts would become public knowledge. . . ." Our conclusion is also strengthened by the absence of any disavowal by Bassett of the likelihood of such a revelation.

Finally, Bassett alleges that he was wrongfully terminated, without good cause and in violation of public policy. These conclusionary allegations do not add to the facts pled. The only operative facts are that termination resulted from Bassett's knowledge that Attebery violated state and federal labor laws in connection with a recent union election, and that Attebery believed Bassett would make this knowledge public unless silenced or discredited. There are no other factual allegations showing lack of good cause or violation of any other discernible public policy.

■   Bassett argues that he is entitled to maintain a state cause of action for wrongful discharge under the authority of *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]. This case holds that an employee who is discharged for refusing to comply with the employer's demand to commit a criminal act may maintain

a tort action against the employer. A termination based upon such refusal contravenes public policy. (*Id.*, at p. 178.)

*Tameny* does not support Bassett's argument. Neither the Supreme Court nor the parties there addressed the preemption issue. Also, *Tameny* involved an employer's request that the employee participate in an illegal scheme to fix retail gasoline prices, a criminal act under both the Sherman Antitrust Act (15 U.S.C. § 1 et seq.) and the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.). These alleged violations were not related to union activities.

Here, the subject matter involves unspecified "serious violations of state and federal labor laws in connection with a recent union election." This unfettered allegation concerning union election improprieties is arguably within the NLRB's jurisdiction.

## II

■ Bassett contends that as a supervisor he is not subject to jurisdiction of the National Labor Relations Act (NLRA). (29 U.S.C. § 151 et seq.)

A supervisor is not an employee within the meaning of the NLRA, and is not ordinarily protected thereunder. (29 U.S.C. § 152(3).)

■ "There are three basic exceptions to this rule [that supervisors are not covered by the NLRA], however, in which an employer's conduct towards a supervisor has been found to violate section 8(a)(1) of the Act: 1) *where a supervisor is disciplined for testifying before the Board or during the processing of an employee's grievance,* [citations]; 2) where a supervisor is disciplined for refusing to commit an unfair labor practice, [citations]; and 3) where a supervisor who hired his own crew was discharged as a pretext for terminating his pro-union crew, [citations]." (*Automobile Salesmen's Union* v. *N.L.R.B.* (D.C. Cir. 1983) 711 F.2d 383, 386, italics added.)

■ ". . . [F]ederal courts have accepted an unbroken line of decisions, that an employer will be held to have violated the Act when it discharges or otherwise discriminates against a supervisor for union-related factors on the theory that such conduct may have the effect of interfering, not with the right of supervisory employees who are not per se protected under the Act, but with the rights of nonsupervisory employees who may suffer infringe-

ment in the exercise of their own rights under the Act." (*Henry* v. *Intercontinental Radio, Inc., supra,* 155 Cal.App.3d at p. 713.)

Bassett claims that he does not fall within the first exception concerning supervisors who testify before the NLRB, because there is no allegation or other evidence that he so testified.

However, Bassett's allegation that he was discharged because Attebery believed that his "serious violations of State and Federal Labor laws in connection with a recent union election . . . would become public knowledge" is the functional equivalent of such testimony for purposes of applying the preemption doctrine. It is illogical to suggest that a discharge for *revealing* labor law violations is within the NLRB's exclusive jurisdiction but that discharge designed to *prevent* such revelations is not. Each is an unfair labor practice falling within the arguably prohibited branch of the *Garmon* doctrine vesting exclusive jurisdiction in the NLRB.

This conclusion is consistent with congressional purpose. As stated in *NLRB* v. *Scrivener* (1972) 405 U.S. 117, 121 [31 L.Ed.2d 79, 82, 92 S.Ct. 798]: "'Congress has made it clear that it wishes all persons with information about such [unfair labor] practices to be completely free from coercion against reporting them to the Board.' [Citation.]"

Moreover, there is authority that the NLRB will entertain jurisdiction over a matter involving a supervisor even though he does not testify before the Board. In *N.L.R.B.* v. *Dal-Tex Optical Company* (5th Cir. 1962) 310 F.2d 58, Anderson, a supervisor, was subpoenaed to testify in a labor case filed by a union objecting to the results of an election, and to testify in a companion case accusing Dal-Tex of "threats and promises" against certain employees. However, *he did not testify* in this consolidated proceeding.

Later, in a third proceeding, Anderson filed a complaint alleging that he had been "discriminated against by the giving to him of a violation slip, all because of [his] testimony" in the consolidated case. In the hearing on this matter, he testified that the violation slip was given to him a day after the hearing in the consolidated case.

The NLRB ordered Dal-Tex to rescind the warning given to Anderson, and this ruling was sustained by the circuit court.[5] (Cf. *NLRB* v. *Scrivener, supra,* 405 U.S. 117, 124 [31 L.Ed.2d 79, 84].) Thus, a supervisor need not actually testify in order to fall within the ambit of the NLRA.

---

[5] The complaint filed by Anderson in the third proceeding alleges that he had been discriminated against because of his testimony in the consolidated case. The *facts* demonstrate that although he was subpoenaed to testify, he did not do so.

## DISPOSITION

The judgment of dismissal entered as to Attebery is affirmed. The petition for writ of mandate attacking the order adjudicating certain issues of fact as to Metromedia is denied.

Ashby, Acting P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 1986.