[No. A058746. First Dist., Div. Two. Aug. 31, 1993.]

GARY G. KELECHEVA, Plaintiff and Appellant, v.
MULTIVISION CABLE T.V. CORP., Defendant and Respondent.

**COUNSEL**

Virdeh & Virdeh and Abraham Virdeh for Plaintiff and Appellant.

Michael W. O'Neil for Defendant and Respondent.

**OPINION**

**PHELAN, J.**—Plaintiff Gary G. Kelecheva timely appeals from a judgment of dismissal entered in favor of defendant Multivision Cable T.V. Corp. on

motion for summary judgment. The superior court ruled that each of the three causes of action alleged in plaintiff's wrongful termination complaint was within the exclusive jurisdiction of the National Labor Relations Board (NLRB) under the federal preemption doctrine first announced in *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] (hereafter *Garmon*). We affirm the trial court's judgment as to the dismissal of plaintiff's tort claim for wrongful termination in violation of public policy, but reverse as to plaintiff's contract-based causes of action.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he was employed by defendant and its "predecessors in interest" for 17 years, beginning in October 1973. Defendant disputes this allegation, but admits it employed plaintiff for a period of approximately four years, from December 1986 to October 1990. Defendant also admits that plaintiff was demoted and transferred in November 1988 from installation supervisor in Rohnert Park to maintenance technician in Sonoma, and promoted to a position as a lead technician in Sonoma in February 1989. At some unspecified point thereafter, defendant warned plaintiff that his employment would be terminated if his performance did not improve. Plaintiff's employment was actually terminated on October 26, 1990.

At the time of discharge, plaintiff held the position of lead technician, and also supervised installation and service personnel in defendant's Sonoma County cable television operations. It is undisputed that plaintiff's employment relationship with defendant was not governed in any way by a collective bargaining agreement. Defendant admits, however, that plaintiff's employment, and the termination of that employment, was governed by policies in its employee handbook.

In his verified complaint, filed October 11, 1991, plaintiff alleged causes of action for wrongful termination in violation of public policy, breach of an implied contract, and breach of the covenant of good faith and fair dealing.[1] For his first cause of action, plaintiff alleged that he was subjected to a campaign of harassment and, ultimately, discharged because he refused to spy on and "write up" coworkers who were involved in a unionization effort of defendant's workforce, and that this course of conduct violated public policy embodied in state and federal labor statutes.

For his second cause of action, plaintiff alleged that he was employed by defendant pursuant to an implied employment contract terminable only for

[1]Although the caption page of plaintiff's complaint lists a cause of action for "defamation," there is no such claim asserted in the body of the pleading.

good cause. Plaintiff further alleged that defendant breached the contract by terminating his employment based on " 'Drummed-up Charges' of insubordination and bad performance . . . for his refusal to interfere with his co-employees' rights to form or join a union."

Plaintiff's third cause of action alleges that defendant breached the implied covenant of good faith and fair dealing in plaintiff's implied employment contract in three different ways: (1) by discharging him because he "refused to follow defendant's instructions to spy on and harass his co-workers who were exercising their legal rights to join or form a Union"; (2) by "violating and failing to follow its own personnel policies by not providing plaintiff with written warning of performance deficiency as a Lead Technician, as required by its personnel policy before discharge, and by 'spying' on plaintiff to 'Drum-Up' charges in bad faith"; and (3) by "failing to provide plaintiff with safety belts ordered, and then 'Drumming up a charge' against plaintiff for allowing co-workers to be in a 'Basket Lift' without a safety belt, . . . and charging plaintiff with insubordination and firing plaintiff unlawfully and in bad faith because plaintiff attempted to bring this intolerable condition to the attention of his superiors in the company."

A bit more detail about plaintiff's claims emerged in connection with defendant's motion for summary judgment. Plaintiff testified at deposition that he was harassed and discharged because he refused to take illegal, discriminatory action against another employee, Kevin Sullivan, after Mr. Sullivan was named as the union's shop steward and negotiating committee member. Apparently, there were several incidents of alleged "failure to properly perform supervisory duties" in which plaintiff refused to write up Mr. Sullivan for wearing a short-sleeved shirt, for not wearing a hard hat, and for being in a basket lift without a safety belt.

In its motion for summary judgment, defendant relied solely on a theory that *Garmon* required preemption of plaintiff's entire action, and maintained that disputed factual issues as to the longevity of plaintiff's employment and other factors bearing on the existence of an implied-in-fact contract terminable only for good cause, were immaterial. Other than admissions contained in defendant's verified answer, and defendant's employee handbook (which was authenticated by defendant in its answer), plaintiff did not present any evidence in response to the summary judgment motion.

The superior court granted defendant's motion for summary judgment by order filed July 1, 1992. Plaintiff timely appealed from the judgment of dismissal by notice dated August 17, 1992.

## DISCUSSION

### A. *Standard of Review.*

■ In reviewing a summary judgment ruling, we independently apply the same three-step analysis required of the trial court: "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim[s] and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674], internal quotation marks omitted.)

### B. *Appellant's Tort Claim for Wrongful Termination in Violation of Public Policy Is Preempted by the National Labor Relations Act.*

■ California courts have long recognized a cause of action sounding in tort for wrongful discharge in violation of public policy. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) The California Supreme Court has recently reaffirmed its commitment to this principle (*Foley* v. *Interactive Data Corp.* (hereafter *Foley*) (1988) 47 Cal.3d 654, 665-667 [254 Cal.Rptr. 211, 765 P.2d 373]), but has limited it to include only those claims of wrongful discharge which allegedly violate a fundamental public policy embodied in constitutional or statutory provisions. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Apparently, plaintiff's first cause of action for wrongful termination in violation of federal labor statutes is an attempt to state such a claim.

■ We must decide, however, whether plaintiff's public policy claim is subject to *Garmon* preemption and, therefore, beyond the jurisdiction of the California courts. ■ In *Garmon*, the United States Supreme Court established "general guidelines" for determining the permissible scope of state regulation of activity touching upon labor-managment relations, and held that when an activity is arguably prohibited or protected by section 7 or section 8 of the National Labor Relations Act as amended (NLRA) (29 U.S.C. § 151 et seq.), the state courts must defer to the exclusive competence of the NLRB in order to avoid state interference with national labor policy. (359 U.S. at p. 245 [3 L.Ed.2d at p. 783].) More recently, the court has refined its preemption analysis and has held that where the alleged conduct falls within the "arguably prohibited" prong of the *Garmon* preemption test,

the critical inquiry is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226, 98 S.Ct. 1745].)

■■■ A careful review of the record reveals that plaintiff's first cause of action is subject to *Garmon* preemption. Plaintiff asserts that he was discharged from his supervisory position because he refused to participate in defendant's unlawful campaign of antiunion harassment. It is essentially undisputed that defendant's retaliatory conduct, if proven, would constitute a violation by defendant of section 8, subdivision (a)(1) of the NLRA. (*Belcher Towing Co.* v. *N.L.R.B.* (5th Cir. 1980) 614 F.2d 88; *Russell Stover Candies, Inc.* v. *N.L.R.B.* (8th Cir. 1977) 551 F.2d 204.)[2] In the circumstances presented in this case, a tort claim for wrongful termination in violation of public policy is clearly preempted. (*Bassett* v. *Attebery* (1986) 180 Cal.App.3d 288, 293-294 [225 Cal.Rptr. 399]; *Henry* v. *Intercontinental Radio, Inc.* (1984) 155 Cal.App.3d 707, 715 [202 Cal.Rptr. 328].)

Relying on *Balog* v. *LRJV, Inc.* (1988) 204 Cal.App.3d 1295 [250 Cal.Rptr. 766], however, plaintiff argues that where refusal to commit unfair labor practices is not the *sole* unlawful reason for termination, i.e., where the discharge is allegedly the product of "mixed motives," the state court may entertain an action for wrongful discharge based on other reasons alleged in the complaint. In *Balog*, the court reversed a judgment on the pleadings, and held that a supervisor's allegations of wrongful termination by an employer acting with multiple illegal motives, only one of which was to retaliate for the employee's refusal to participate in unlawful labor practices, were sufficient to withstand *Garmon* preemption. (204 Cal.App.3d at p. 1304.) The court further observed that, so long as Balog's refusal to commit an unfair labor practice was not the sole reason for his termination, he could recover for wrongful discharge based on any other unlawful reason(s) which were "in whole or in part the motivation for his termination." (*Id.* at p. 1311.)

Plaintiff's reliance on *Balog* is misplaced. The instant appeal comes to this court in a much different posture. In its motion for summary judgment, defendant presented testimony from plaintiff's deposition apparently admitting that defendant's sole unlawful motive in terminating his employment

---

[2]In the Ninth Circuit, there may be the additional requirement that the union employees have knowledge of the retaliatory reason for the supervisor's discharge. (See *General Engineering, Inc.* v. *N.L.R.B.* (9th Cir. 1962) 311 F.2d 570, disapproved on other grounds, *NLRB* v. *Raytheon Co.* (1970) 398 U.S. 25 [26 L.Ed.2d 21, 90 S.Ct. 1547].) Although plaintiff does not raise the point, any such additional requirement is arguably satisfied here by evidence that plaintiff discussed with the union steward, Kevin Sullivan, defendant's alleged plan to harass union organizers.

was its desire to retaliate against plaintiff for his refusal to engage in union-busting activity. It was incumbent upon plaintiff to come forward with some evidence to raise a triable issue of fact as to some *other* unlawful motive for his discharge. He did not do so. He offers nothing but bare allegations and argument in support of his theory that he was discharged, in part, for complaining of unsafe working conditions.[3] Plaintiff's claim for wrongful termination in violation of public policy was, thus, properly dismissed by the superior court. (*Bassett* v. *Attebery, supra,* 180 Cal.App.3d at pp. 293-294; *Henry* v. *Intercontinental Radio, Inc., supra,* 155 Cal.App.3d at p. 715; see also *Rodriguez* v. *Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668, 673 [253 Cal.Rptr. 779].)

### C. *Garmon Does Not Require Preemption of Plaintiff's Contract-based Claims.*

Whether the state courts may entertain an action for breach of an individual employment contract, brought by a supervisor who alleges that he or she was terminated for refusing to participate in unfair labor practices, is a question of first impression in California. All of the California cases applying *Garmon* analysis in such cases predate *Foley*,[4] and involve only tort claims asserted against the former employer. (*Balog* v. *LRJV, Inc., supra,* 204 Cal.App.3d at p. 1298 [retaliatory discharge and intentional infliction of emotional distress]; *Bassett* v. *Attebery, supra,* 180 Cal.App.3d at p. 291, fn. 3 [tortious breach of the covenant of good faith and fair dealing, and wrongful discharge in violation of public policy]; *Henry* v. *Intercontinental Radio, Inc., supra,* 155 Cal.App.3d at pp. 710-711 [same, plus violation of Lab. Code, §§ 1101, 1102].) We must, therefore, decide whether plaintiff's contract-based causes of action may be maintained in this forum.

The *Garmon* court established certain exceptions to the broad preemption principle announced in that case. First, state regulation of labor activity is permitted when the activity involved is of "peripheral" concern to federal labor law. (359 U.S. at p. 243 [3 L.Ed.2d at pp. 781-782].) Second, states may regulate conduct which touches "interests . . . deeply rooted in

---

[3]To the extent he alleged that he was terminated because of such complaints, plaintiff's first cause of action is also defective in that he has not identified any statutory or constitutional provision relating to workplace safety, or retaliation for safety complaints, in violation of which his employment was terminated. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1095.)

[4]In *Foley*, the California Supreme Court fundamentally changed the law of wrongful discharge by reaffirming the Court of Appeal decision in *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917] (recognizing an implied-in-fact employment agreement terminable only for good cause), and by holding that only contract remedies are available for a breach of the implied covenant of good faith and fair dealing in the employment context. (47 Cal.3d at pp. 675-682, 689-700.)

local feeling and responsibility." (*Id.* at p. 244 [3 L.Ed.2d at pp. 782-783].) Since *Garmon* was decided, moreover, the United States Supreme Court has emphasized that "inflexible application of the [*Garmon*] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 302 [51 L.Ed.2d 338, 351-352, 97 S.Ct. 1056].) The Supreme Court's refusal to apply the *Garmon* guidelines in a literal, mechanical fashion demonstrates that "the decision to pre-empt . . . state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting the state court to proceed. (*Vaca* v. *Sipes* (1967) 386 U.S. 171, 180 [17 L.Ed.2d 842, 851-852, 87 S.Ct. 903].)

 Applying these principles, the Supreme Court has held that the NLRA does not preempt state court jurisdiction of state law breach of contract claims against an employer where the controversy presented to the state court is not identical to that which could be presented to the NLRB. (*Belknap, Inc.* v. *Hale* (1983) 463 U.S. 491, 511-512 [77 L.Ed.2d 798, 814-816, 103 S.Ct. 3172]; see also Annot. (1985) 75 L.Ed.2d 988, 1011.) *Belknap, Inc.* involved replacement workers hired during a strike who sought to recover damages in state court for breach of an alleged promise by the employer for permanent jobs. (463 U.S. at pp. 511-512 [77 L.Ed.2d at pp. 814-816].)[5] The court concluded that such claims are not preempted, despite arguments that the alleged contracts were "part and parcel" of an arguable unfair labor practice (ULP) by the employer, that breach of the contracts was arguably required by the NLRA, that litigation by the replacements would frustrate the federal interest in ending strikes and settling labor disputes, and that NLRB adjudication of the union's ULP claims might produce results in conflict with those of the state court litigation of the replacements' breach of contract action. (*Id.* at pp. 528-529 [77 L.Ed.2d at pp. 826-827] (dis. opn. of Brennan, J.).) The *Belknap, Inc.* court rejected these arguments, reasoning that "The interests of the Board and the NLRA, on the one hand, and the interest of the State in providing a remedy to its citizens for breach of contract, on the other, are 'discrete' concerns." (*Id.* at p. 512 [77 L.Ed.2d at pp. 815-816], citing *Farmer, supra,* 430 U.S. at p. 304 [51 L.Ed.2d at pp. 352-353].)

At least one other state court has analyzed an individual employee's state law cause of action for breach of an implied employment contract under

[5]The *Belknap, Inc.* court separately analyzed the replacement workers' claim of misrepresentation, and concluded that the substantial state interest in protecting its citizens from "misrepresentations that have caused them grievous harm" outweighed any interference with the board's determination of matters within its jurisdiction. (463 U.S. at pp. 510-511 [77 L.Ed.2d at pp. 826-827].)

*Belknap, Inc.,* and concluded that such claims are not preempted. (*Roberts* v. *Automobile Club of Michigan* (1984) 138 Mich.App. 488 [360 N.W.2d 224, 227-228], app. den. (1986) 424 Mich. 867, cert. den. 479 U.S. 889 [93 L.Ed.2d 263, 10 S.Ct. 289].) The *Roberts* court held that the state's "substantial interest in adjudicating contractual disputes arising within its jurisdiction . . . outweigh[s] any possible interference with the federal labor laws that might result from permitting the action for breach of contract to proceed." (360 N.W.2d at p. 228; see also *Hafner* v. *Clinton Care Center, Inc.* (Mich.App. 1985) 118 Lab.Rel.Ref. Manual (Bur.Nat.Affairs) p. 2740 [supervisor's implied contract claim not preempted]; but cf. *Beaman* v. *Yakima Valley Disposal, Inc.* (1991) 116 Wn.2d 697 [807 P.2d 849].)

Plaintiff's breach of contract claim is on much the same footing as was the strike replacements' contract cause of action in *Belknap, Inc.,* and the individual employee's contract claim in *Roberts.* Plaintiff is asking the state court to determine whether defendant breached an implied-in-fact contract by terminating his employment without adequate notice or good cause. The state court inquiry would be directed first to the existence of the implied contract, which would turn on factors such as the duration of plaintiff's employment, defendant's personnel policies and practices, and plaintiff's performance history, commendations, merit raises, and promotions. (*Foley, supra,* 47 Cal.3d at pp. 680-682; see also *Pugh* v. *See's Candies, supra,* 116 Cal.App.3d at pp. 326-327.) On the issue of breach, the state court litigation would focus on whether plaintiff, in fact, violated employer work rules relating to insubordination and unsatisfactory performance, and whether defendant honored other implied-in-fact commitments as to warnings, grievance procedures, and fair treatment. Plaintiff's contract cause of action does *not* require any showing of an unlawful motive for the alleged breach, and he would only be entitled to contractual remedies if he proves his case. (See *Foley, supra,* 47 Cal.3d at pp. 699-700, fn. 41; and see *Roberts* v. *Automobile Club of Michigan, supra,* 360 N.W.2d at p. 228.)

The controversy before the state court on plaintiff's claim for breach of the covenant of good faith and fair dealing would also be distinctly different from the litigation of an unfair labor practice charge that might have been, but was not, presented to the NLRB. If plaintiff is able to establish the existence of an employment agreement, California law will supply a covenant of good faith and fair dealing, which requires that neither party do anything to deprive the other of the benefits of the agreement. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].) A breach of the covenant may then be established, inter alia, by a showing that defendant engaged in " '. . . bad

faith action, extraneous to the contract, with the motive intentionally to frustrate the [employee's] enjoyment of contract rights, . . .' " including the right to continued employment absent good cause for discharge. (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 549 [249 Cal.Rptr. 5], quoting *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) The state court inquiry on this claim would likely focus on whether defendant failed to follow its own personnel policies and/or falsified the asserted grounds for discharge. (*Kerr* v. *Rose* (1990) 216 Cal.App.3d 1551, 1561-1562 [265 Cal.Rptr. 597]; *Pugh* v. *See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 764 [250 Cal.Rptr. 195].) Although evidence of defendant's antiunion animus may be relevant to plaintiff's claim of breach of the covenant of good faith and fair dealing, plaintiff would *not* be required to prove that defendant, in fact, discharged him for reasons that would violate federal or state labor law. Additionally, only contract remedies would be available if plaintiff establishes his right to recover under this theory. (*Foley, supra*, 47 Cal.3d at p. 700.)

To summarize, we conclude that the state has a substantial interest in providing contract remedies for employees such as plaintiff—supervisors who are neither covered by collective bargaining agreements nor directly protected by the National Labor Relations Act—which outweighs any marginal effect the adjudication of such employees' contract claims might have on the administration of national labor policies. Accordingly, we will reverse the summary judgment in this case insofar as it extended to plaintiff's contract-based causes of action.

D. *There Are Triable Issues of Fact as to the Existence and Breach of Implied Employment Contract/Covenants.*

■ Having decided that plaintiff may prosecute his contract-based claims in state court, we must determine whether there is a triable issue of material fact as to the existence of the alleged implied employment contract, and as to the alleged breaches of that contract and the implied covenant of good faith and fair dealing.

Defendant argues that plaintiff's employment was "at-will" pursuant to its employee handbook. However, the handbook also contains provisions which arguably limit or modify the "at-will" language. First, the handbook establishes a probationary period, during which an employee is subject to "involuntary termination" for unsatisfactory performance. The handbook also contains an extensive set of "work rules"—including one relating to unsatisfactory performance, presumably by nonprobationary employees—violation of which "shall, *depending on the seriousness of the offense and all*

*pertinent facts and circumstances*, result in disciplinary action, including an *oral or written warning*, suspension, or discharge." (Italics added.) Further, the handbook contains express commitments by defendant to "avoid, insofar as consistent with its best interest, the need for employee layoffs and involuntary terminations," and to "deal[] directly with its employees on a fair and equal individual basis" through its grievance procedure. In addition, defendant's handbook contains assurances that it will "provide each employee with a safe working environment." Defendant has admitted that "Plaintiff reasonably could rely on its Employee Handbook," and that "Plaintiff could reasonably assume that the Defendant would apply its policies even-handedly and would make its Handbook(s) applicable to Plaintiff's employment and/or the termination of his employment."

Given defendant's admission of a mutual understanding as to plaintiff's right to rely on its personnel policies, the ambiguities as to conditions under which defendant may terminate nonprobationary employees, and the fact-specific nature of the inquiry into discipline for employee misconduct or performance deficiencies, we conclude there is a triable issue of fact as to whether plaintiff's employment was terminable—and terminated—for good cause. (See *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896, 903-905 [185 Cal.Rptr. 617]; *Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 753, 755 [200 Cal.Rptr. 605].)

Further, assuming that plaintiff can establish the existence of an employment contract, there is a triable issue of fact as to whether defendant breached the covenant of good faith and fair dealing which is implied therein by law. Either of the alleged failures to follow its own personnel policies—relating to safety and progressive discipline for inadequate performance—provide a basis on which a rational trier of fact could conclude that defendant acted in bad faith in connection with plaintiff's discharge. (*Kerr* v. *Rose*, *supra*, 216 Cal.App.3d at pp. 1561-1562; cf. *Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 481 [4 Cal.Rptr.2d 522].) The alleged manufacture and assertion by defendant of false reasons for terminating plaintiff's employment may also be actionable as a breach of the covenant of good faith and fair dealing. (*Pugh* v. *See's Candies, Inc.*, *supra*, 203 Cal.App.3d at p. 764; and see generally, *Rulon-Miller* v. *International Business Macines Corp.* (1984) 162 Cal.App.3d 241, 252, fn. 6 [208 Cal.Rptr. 524], disapproved on other grounds, *Foley*, *supra*, 47 Cal.3d at p. 688.)

## CONCLUSION

The judgment of the superior court dismissing plaintiff's first cause of action is affirmed. The judgment as to plaintiff's second and third causes of

action is reversed, and the case is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied September 29, 1993, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 17, 1993.