Filed 9/1/16  Certified for Publication 9/22/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KHANH DANG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARUICHI AMERICAN CORPORATION,<br><br>    Defendant and Respondent. | B269005<br><br>(Los Angeles County<br>Super. Ct. No. BC552668) |

APPEAL from an order of the Superior Court of Los Angeles County. Elizabeth R. Feffer, Judge.  Reversed and remanded.

Gould & Associates, Michael A. Gould, Aarin A. Zeif for Plaintiff and Appellant.

Cummins & White, Larry M. Arnold, Erick J. Becker, Scott R. Carpenter for Defendant and Respondent.

_____

Plaintiff and appellant Khanh Dang sued his former employer, defendant and respondent Maruichi American Corporation (Maruichi), for wrongful termination in violation of public policy, claiming that Maruichi discharged him for engaging in concerted activity relating to unionizing efforts. The trial court granted summary judgment in Maruichi's favor. The court found it lacked jurisdiction because Dang's claim was preempted by the National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.) under *San Diego Unions v. Garmon* (1959) 359 U.S. 236 (*Garmon*).

On appeal, Dang argues that, as a supervisor, he is not covered under the NLRA, and that the NLRA does not reach his claim. Based on the evidence presented on the motion for summary judgment, we find there is no basis to conclude Dang's claim is arguably subject to the NLRA. Accordingly, we reverse.

## BACKGROUND

Khanh Dang filed a complaint in July 2014, against Maruichi for wrongful termination in violation of public policy. The complaint contained only cursory allegations, stating that Dang worked as a maintenance supervisor for Maruichi until it terminated his employment because he was involved in concerted activity, including attempts to join a union.

Maruichi moved for summary judgment in August 2015, arguing primarily that Dang's claim was preempted by the NLRA. In support of the motion, Maruichi presented evidence that, in July 2013, it became aware of an effort by the United Steelworkers to organize employees at Dang's place of employment, Maruichi's Santa Fe Springs facility. The union won an election among Maruichi employees and was certified as their collective bargaining representative in September 2013. Prior to the election, Dang was discharged because, according to Maruichi's general manager, Maruichi employees indicated Dang's mistreatment of them was the reason they wanted to unionize.

Dang opposed the motion for summary judgment, arguing that, as a supervisor, his employment was not subject to the NLRA. He asserted that he was fired for engaging in concerted activity related to potential unionizing. According to Dang, the activity he

2

engaged in included:  discussing the organization of the union with several employees; asking an employee how meetings about the union went; asking an employee "How['s] the union deal going"; asking what certain employees thought about unionizing; telling an employee that, as a supervisor, he could not give advice relating to the union; talking with an employee about the good points and bad points of a union; and telling a fellow supervisor that the union might make their jobs as supervisors more difficult.  When talking to employees, Dang tried not to express an opinion for or against the union.

In deciding Maruichi's motion for summary judgment, the trial court found that it lacked authority to determine whether the NLRA applied to plaintiff's claim, and that this was a decision that should be left to the National Labor Relations Board (NLRB).  Based on its determination that state court jurisdiction was preempted, the court granted summary judgment.

Dang appealed.[1]

## DISCUSSION

The NLRA preempts a putative state law claim based on activity subject to section 7 (section 7; 29 U.S.C. § 157) or 8 (section 8; 29 U.S.C. § 158) of the NLRA. (*Garmon, supra,* 359 U.S. 236, 244-245.)  Section 7 of the NLRA guarantees the right of employees to organize, join labor organizations, bargain collectively, and engage in other concerted activities.  (29 U.S.C. § 157; *Garmon*, at p. 241.)  Section 8, as pertinent here, prohibits employer interference with employees' exercise of section 7 rights.  (29 U.S.C. § 158, subd. (a)(1); *Garmon*, at p. 241.)

The NLRB, and not a state court, has exclusive authority to determine whether a claim "arguably subject to" section 7 or 8 of the NLRA is preempted.  (*Garmon*, *supra*, 359 U.S. 236, 244-245.)  "[W]hen an activity is arguably prohibited or protected by

---

[1]     An order granting summary judgment is not appealable.  In the interests of justice and efficiency, we construe the order granting summary judgment as an appealable judgment.  (*H.N. & Frances C. Berger Foundation v. City of Escondido* (2005) 127 Cal.App.4th 1, 6-7, fn. 5.)

section 7 or section 8 . . . the state courts must defer to the exclusive competence of the NLRB in order to avoid state interference with national labor policy." (*Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 527-528, citing *Garmon*, at p. 245.) State jurisdiction is "extinguished" when there is preemption under *Garmon*. (*Longshoremen v. Davis* (1986) 476 U.S. 380, 391 (*Davis*).) Matters that are only a "peripheral concern" of the NLRA, however, or that are "deeply rooted in local feeling and responsibility," are not subject to *Garmon* preemption. (*Garmon*, at pp. 243-244.)

Despite the NLRB's broad authority, state courts still have a role in the preemption analysis. "A claim of *Garmon* pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* pre-emption is raised, it must be considered and resolved by the state court." (*Davis*, *supra*, 476 U.S. 380, 393.) The requirement that conduct "'arguably'" be subject to section 7 or 8 of the NLRA for preemption to apply "is not without substance." (*Davis*, at p. 394.) The party claiming preemption "must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted." (*Id.* at p. 396.)

Arguable preemption under *Garmon* is not a given in this matter. Evidence presented on the motion for summary judgment showed that Dang was a supervisor at Maruichi.[2] Supervisors are explicitly excluded from the definition of "employee" under the NLRA and therefore are not entitled to the protections afforded by section 7. (29 U.S.C. 152(3); *Operating Engineers v. Jones* (1983) 460 U.S. 669, 671, fn. 1.)

Nevertheless, discharge of a supervisor may constitute an unfair labor practice under section 8, subdivision (a)(1), and therefore be subject to the NLRA, "if it infringes on the [section] 7 rights of the employer's nonsupervisory employees." (*Davis*, *supra*,

---

[2]    On appeal, Maruichi asserts that Dang may not have been a supervisor and that his status should be determined by the NLRB. This assertion is contrary to evidence presented by Maruichi below, in which its general manager, in deposition testimony, referred to Dang as a "supervisor." In any event, Maruichi bore the burden of submitting evidence sufficient to support a finding that Dang was an employee, not a supervisor. (*Davis*, *supra*, 476 U.S. 380, 395.) Maruichi did not carry this burden.

476 U.S. 380, 385, fn. 4.)  The "post-1982 standard" for finding NLRA violations in disciplinary actions against supervisors was explained in *Parker-Robb Chevrolet, Inc.* (1982) 262 NLRB 402 (*Parker-Robb*), affd. *Automobile Salesmen's Union v. N.L.R.B.* (D.C. Cir. 1983) 711 F.2d 383 (*Automobile Salesmen*).  (*Davis*, at p. 385, fn. 4.)  *Parker-Robb* held that discharge of a supervisor may violate section 8 "in certain circumstances," including when an employer discharges a supervisor "for giving testimony adverse to an employer's interest either at an NLRB proceeding or during the processing of an employee's grievance under the collective-bargaining agreement," "for refusing to commit unfair labor practices," or "because the supervisor fails to prevent unionization." (262 NLRB at pp. 402-403.)  Termination of a supervisor's employment in these situations is unlawful because "it interferes with the right of employees to exercise their rights under Section 7."  (*Id.* at p. 404.)

Discharge of supervisors merely because of their participation in union or concerted activity is not unlawful, however, because supervisors (unlike employees) are not protected by section 7.  (*Parker-Robb*, *supra*, 262 NLRB 402, 404.)  An employer may insist on the loyalty of its supervisors, who are "not free to engage in activity which, if engaged in by a rank-and-file employee, would be protected."  (*Automobile Salesmen*, *supra*, 711 F.2d 383, 386.)  Thus, even when the termination of a supervisor is part of "'a pattern of conduct aimed at coercing employees in the exercise of their section 7 rights'" (*id.* at p. 385), there will be no violation unless the discharge "directly interferes with the section 7 rights of the statutorily protected employees."  (*Id.* at pp. 387-388.)

Based on the evidence presented on the motion for summary judgment, there are no grounds to find that the discharge of Dang may have interfered with Maruichi employees' section 7 rights.  None of the circumstances that *Parker-Robb* held may constitute a violation of section 8 because they interfere with section 7 protections (termination for testifying adversely to an employer's interest, refusing to commit an unfair labor practice, or failing to prevent unionization) (262 NLRB 402, 402-403) is present.  Indeed, Maruichi's stated reason for terminating Dang's employment—that he mistreated employees, spurring them to consider unionizing—was not arguably likely to

5

impact its employees' ability to engage in activity protected by section 7. And Dang's explanation for his discharge—that he asked benign questions relating to potential unionization and expressed no opinion to employees regarding the union—could (at most, and only under a very liberal view of the evidence) possibly constitute a supervisor's participation in concerted activity, termination for which is not a basis for finding a section 7 or 8 violation. (*Parker-Robb*, at p. 404.)[3]

Thus, based on the evidence presented, there was no reasonable basis to find that Dang's discharge was arguably prohibited by the NLRA, and the trial court erred by finding preemption. (*Davis*, *supra*, 476 U.S. 380, 394 ["no dispute" that if the plaintiff was a supervisor he was legally fired "and there is no pre-emption"]; *Balog v. LRJV, Inc.* (1988) 204 Cal.App.3d 1295, 1302 ["The *Parker-Robb* board specifically differentiated between the unlawful (and thus preempted) discharge of supervisors who refuse to commit unfair labor practices and the lawful (and therefore not preempted) discharge of supervisors for their participation in union or concerted activities."].) As held by the *Davis* court, in finding that the state court properly found no preemption, "a party asserting pre-emption must put forth enough evidence to enable a court to conclude that the activity is arguably subject to the [NLRA]." (*Davis*, at p. 398.) The evidence here was insufficient to support such a conclusion.

Prior California decisions applying *Garmon* preemption do not assist Maruichi. *Henry v. Intercontinental Radio, Inc.* (1984) 155 Cal.App.3d 707, in which the discharge of a supervisor was found to arguably fall within the jurisdiction of the NLRB, was decided prior to *Davis* and relied on authority predating *Parker-Robb* and *Automobile Salesmen.* Because *Henry* did not consider potential preemption under the "post-1982 standard" summarized in these decisions (*Davis, supra,* 476 U.S. 380, 384, fn. 4), it provides no guidance here. In *Bassett v. Attebery* (1986) 180 Cal.App.3d 288, a

---

[3]   We make no determination whether, based on the evidence, Dang can actually prove his claim for wrongful termination in violation of public policy under California law.

6

supervisor's claim was the "functional equivalent" of discharge based on testimony before the NLRB. (*Id.* at p. 295.) There are no allegations in this matter that Dang was fired for giving testimony or its equivalent. Similarly, in *Kelecheva v. Multivision Cable T.V. Corp.*, *supra*, 18 Cal.App.4th 521, 528-529, the plaintiff supervisor was discharged because he refused to engage in union-busting activity. Such a termination would likely fall within *Parker-Robb*'s exception for supervisor discharge based on "refusing to commit unfair labor practices" (262 NLRB 402, 402-403). Again, no similar allegations or evidence are present in this case.

In summary, the evidence presented on the motion for summary judgment does not show that Dang's discharge was arguably subject to section 7 or 8 of the NLRA. A finding of preemption was therefore not warranted and the motion should have been denied.

## DISPOSITION

The judgment is reversed. The order granting summary judgment is vacated and the case is remanded for trial proceedings.

Dang is awarded his costs on appeal.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

7

Filed 9/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KHANH DANG, | B269005 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC552668) |
| v. | |
| MARUICHI AMERICAN CORPORATION, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above entitled matter filed on September 1, 2016, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.